O’Neall, J.
The first ground for a new trial cannot avail the ’defendant; for the presiding judge reports that he admit. te^ ^le declarations of the deceased, (Mill Sumner) to be given in evidence, according to the rule laid down in the case of Sims v. Sanders, State Rep. 374, and M’Kane v. Bonner, 1 Bail. 113. These cases have also the sanction of this Court in the case of Newraan and wife v. Wilbourne, 1 Hill’s Chan. *491 Rep. 13. I agree, however, with the presiding judge and the counsel for the defendant, that the rule ought not to be extended beyond the class of cases which it covers. If, in this case, the defendant relies on the possession of Giles Sumner, connected alone with the declaration of the deceased, (Mill Sumner) at the time he was building, which was the commence, ment of his possession, I do not think that any after declarations of his father ought to be received in evidence for the plaintiff; but if he relies, as the judge says, on Mill Sumner’s declarations, running through the whole period in which Giles had possession, then his declarations, made at any time during the possession of Giles, would be evidence for the plaintiff. This explanation of our view of the application of the rule in Sims v. Sanders to this case, will be sufficient to guide the Court in the admission of evidence on the next trial.
2. We agree with the presiding judge below, that Sum Sumner was a competent witness for the plaintiff. For although the defendant had possession of the land during the lifetime of the witness’ testator, who claimed rent from him, and which is now in a process of recovery by his executor, and which, if recovered, would fall into the residuum of his estate, in which the witness is interested as a residuary legatee, yet he can gain or lose nothing by the event, of this suit; nor can this record be evidence for or against him. The decision of this case will neither establish nor deny the right of the testator to recover the rents sued for; in that case his title to the land cannot come in question; the isolated question will be whether the defendant rented it from him.
3. The third ground constitutes such exceptions to the judge’s charge as to entitle the defendant to a new trial. The judge below held, “ that a more occupation, by permission, even under a •parol gift, would not confer title under the statute of limitations ; that such a possession was a mere tenancy at will, and that it did not become adverse except by some act or. declaration by the occupant, affirming an exclusive claim in his own right, and in defiance of his against whom, he claims.” This was, I think, in some respects, an erroneous view of the law, and it may have misled the jury. In the first placo, I think, “ that a mere occupation, by permission, under a parol gift, will confer title under the statute of limitations.” It is true, as the judge says, it is a tenancy at will in its. commencement, and I will add, until the time limited by the statute has run out; then it becomes a good and indefeasible title in law against the grantor. The occupant is in possession, in his own right, and claiming it as his own, and although this possession is permissive, that is, by the consent of the grantor, and may be ended by him at any time he thinks proper to do so, provided *492 ^ *s before the time limited by the statute, yet after that timo has run out, he cannot claim to defeat it because it commenced under him. In the case of Willison v. Watkins, it was held, tjjat «if the tenant disclaims the tenure, claims the fee adverse-iy ¡u right of a third person, or Ms cum, or attorns to another, his possession then becomes a tortious one by the forfeiture of his right.” 3 Pet. Rep. 49. The reason is, because his act has furnished his landlord with the legal right to enter upon him ; and after the lapse of the statutory time he must be regarded as in by his own title. So in Simmons v. Parsons, decided at this place in December Term, 1829, (not reported, although it ought 10 have been long since, and will be, I hope, in a note to this case,*) it was held that an entry and possession for more than *493 live years before 1824, under a contract of purchase, not in writing, would confer a good title. In that case, as in this, the verbal contract to buy, under the stat. of frauds and perjuries, only amounted to a tenancy at will until the statute run out, and then it became a legal title, for the entry then is to be regarded as in the title of the occupant. The case of Roberts v. Roberts, 2 M’C. 268, is the very case before us: there a possession of five years, of land under a parol gift, was held to be a good title under the statute of limitations.
In the second place, the judge is in error in supposing that some act or declaration of the occupant, affirming an exclusive claim in his own right, was necessary in order to give title *494 under the statute. It was necessary that he should hold possession of the laud for himself, as his own, and not for another. This was to be judged of from the manner in which he acquired possession. If it was delivered to him by his father as his own, and he cultivated and used it as such, then there was no necessity for any other distinct assertion of title.
In the third place, there was error in the judge’s charge in supposing that the possession of Giles Sumner must be in defiance of his father’s right, against whom he now claims. This error has already been partially demonstrated; but adverse possession is not always a hostile possession to the title of him who claims against the occupant. It very often commences *495 and is perfected under that very title, and derives its effect from it. It is said iu Simmons v. Parsons, adverse possession “ is the actual occupation or pedis possessio of land as one’s own.” This may cither commence in a permission from the grantor to the occupant, to so regard it, or it may commence in an entry against his will. In this case, the deceased, Giles Sumner, had the actual occupation, or pedis possessio. How did he hold it? — for himself or for his father ? This is answered by the manner in which he acquired possession: If it was given to him by his father, it is clear he held for himself, and his title is good to the extent of the boundaries of the land intended to be given ; if it was not given, then he held for his *496 father. So the true questions for the jury were : 1st. How long was Giles Sumner in possession before 1824? 2d. If more than five years, then did he hold' the possession under a g¡££ af ¿jjg jan(j by ifis father to him ? And 3d. Hid that gift intend to embrace the whole of the land in dispute ? If these questions are answered affirmatively by the jury, then the defendant must have their verdict. If the two first only can be answered generally for the defendant, and the third only in part, then the plaintiff must recover so much of the land as is not embraced in the parol gift.
This is giving to the parol gift its true effect. It does not operate as title per se; but it gives a character to the possession, and operates as a color of title, to shew how far the actual possession should have constructive effect.
4. As to the defendant’s fourth- ground, I do not think that there is any thing in it. For, if it were true that it was the understanding between the father and son, that the son should be the real owner of the land, but that the father should retain, the title to protect it against his debts, I apprehend the son would be bound by the arrangement, and could not dispute his father’s title. For such an arrangement can occupy no better position than if Giles Sumner had conveyed the land to his father, Mill Sumner, to evade the payment of his debts ; in such a case, the conveyance would be void against his creditors for covin in law ; but it would bind him and his heirs.
The motion for a new trial is granted on the third ground.
Johnson and Harper, Js. concurred.

 James Simmons v. Samuel Parsons and others.
Tried before Mr. Justice CTNeall, at Laurens, Fall Term, 1829:
Twenty-fire oftand,Wales's tiine, unexplain-the execution of a deed; but this legal presump-butted1 by the'u-inform assertions °hatheno°Udeed ever was executed. (•»;
vorseT possessioü of granted lands, undercolorófr’ tie, e}vfflconfer title to the extent definea0lmda™S
Adverse possession is the myXyiS sio of land, as color any thing which shews the extent claim,asa^ondi receipt, or a writ 1 tractof Br°'ico"" definhi|uic'tile' boundaries: and Reentered under an unconditional *493 parol contract of purchase from S. and continued in possession under that purchase for more than five years, (before 1824): Heldt that this was an adverse possession, which would confer a good title to Ins actual possession, or to the extent of his boundaries,if defined by color of title.
*492 Trespass quare clausum fregit. The defendant, Samuel Parsons, pleaded liberum tenementum, and the other defendants, liberum tene-menlum in Samuel Parsons, and that they entered and committed the alledged trespass by his command, as his servants, &c. The plaintiff had occupied the premises as the tenant of Jas. Hunter, and jn his absence from home the defendants entered and forcibly withheld the possession. Hunter claimed under Littleton Parsons, who executed a mortgage of the premises to him in 1821, which was sub-se<luently foreclosed by a sale under an order of Court, at which Hunter became the purchaser, and received the sheriff’s deed, 7th March, 1825. The defendants adduced a regular paper title to Sa-nmel Parsons. The plaintiffrelied on the long and continued possession of Littleton Parsons to establish title ; in relation to which it appear-e<^ from the evidence on his part, that Littleton Parsons had entered under a contract of sale by his brother Samuel; that he built a house, and cleared and cultivated the land, and resided on it from about the year 1800 until shortly before the sheriff’s sale in 1825, during which time he claimed the land as his own, and held by definite boundaries ; ac-Samuel Parsons acknowledged that his father had contracted with him for the land for Littleton, and had paid him about $60 on that account; that Littleton applied to Samuel for titles about twelve years aS°> who replied that he would give them when he was paid for the land ; that Littleton repeatedly afterwards declared ho had paid for tke land, but could not get Samuel to make him a deed for it; and about the year 1819 he was about instituting a suit against him to obtain it, and shewed a receipt from Samuel in part payment, to his counsel, who then advised him that his title was perfect; that when he executed the mortgage, he said the land was paid for and was his, and when he left it, he put Hunter in possession.
. On the part of the defendants, a witness proved that Littleton asked and obtained permission from Samuel to build ; and Littleton *493 Parsons, who was examined by commission, testified that he never had received title from Samuel; that he never contracted to purchase the land, nor had his father for him ; that he never claimed the land as his own, and that for the last five years he lived on it, he paid rent to Samuel.
*492 (a) But sec Hutchison v. Noland, 1 Iiill, 222 *, Riddlchoover v, Tvinard, 1 Hill Oh an. Hep- 37*, R.
*493 Mr. Justice O’Neali, made the following report of his charge to the jury, on the law of the case :
1 instructed the jury that the defendants had shewn a good paper title in Samuel Parsons, and that unless the plaintiff' had succeeded in shewing that he was divested of- it, and that the lessor of the plaintiff had a good title in law to the land in dispute, the defendants must have a verdict. It was contended on the part of the plaintiff: 1st. That the proof would authorize the jury to presume the execution of a deed from Samuel to Littleton Parsons. 2d. That Little-ton Parsons, before the year 1824, had an adverse possession for more than five years, under color of title, and hence that his title was a good title in law.
Upon the first position assumed by the plaintiff, I said to the jury, that the proof of at least 25 years possession, unexplained, would presume the execution of a deed. That a less time would be sufficient. But that this legal presumption was not conclusive ; it was susceptible of explanation, and might be rebutted and destroyed. If one enters as the tenant of another, a possession of any length of time under this tenancy, would not raise the presumption. To raise the presumption of the execution of a deed to the occupant, from lapse of time, the possession must be in an adverse right to all others. That, therefore, if Littleton Parsons’ possession was as the tenant of Samuel, it was, of course, not adverse to his right, and, oí course, no presumption to divest his title could arise from it. But I said to the jury, that there was one circumstance proved in the case, which completely rebutted the presumption of the execution of a deed; it was the uniform, uncontradicted assertion of Littleton that none ever was executed.
On the second position assumed by the plaintiff, I instructed the jury that five years adverse possession of granted lands, before Dec. 1824, under color of title, conferred a good title to the extent of the boundaries defined by the color of title.
It was, therefore, necessary to inquire what was adverse possession! It is the actual occupation or pedis possessio of land, as one’s own. *494 Did Littleton Parsons have this adverse possession 1 In order to enable the jury to decido this question, I instructed them, that where one enters as the tenant of another, he cannot dispute his landlord’s title. That where one enters as a purchaser upon condition, he becomes guasi tenant, and cannot contest the title under which he entered. These general rules were, however, I said to the jury, subject to qualification. If one enters as a tenant, and .subsequently makes an unconditional purchase, his possession subsequent to his purchase would be adverse. For, by the sale, the landlord consents to the termination of the relation of landlord and tenant. He recognizes the tenant as the owner, and consents to give him his own title. It may be likened to the case of a tenant who goes out, and subsequently acquires a title, and bona fide enters under it. His previous tenancy cannot affect liis subsequent possession. So here the relation of landlord and tenant is terminated. He holds for himself and not for another; and hence his possession, under his purchase, is distinct from his tenancy. What, however, is meant by the rule that the tenant cannot dispute the title of his landlord 1 It is that he cannot set up any adverse title. But if he says, I admit the title under which 1 entered, but I will shew that it is now in me by purchase from my landlord, it is clear that this is not disputing the title of the landlord. It is making no adverse assertion of claim. The claim is consistent with it, and if not made out, the landlord’s title is not prejudiced. I therefore said to the jury, that if they believed Littleton Parsons unconditionally bought from Samuel, and continued in possession under that purchase for more than five years before Dec. 1824, then that this would be an adverse possession, which would give him a good title to his actual possession, or to the extent of his boundaries, if defined by color of title, (as the case might be) ; unless they should believe, that before the execution of the mortgage to Hunter, he gave up his purchase, and became a tenant to the defendant Samuel. If they should believe that he did, then this ended all pretence of title on the part of Littleton, and the defendants must have a verdict. If, however, they should believe that he did not, then it was necessary to inquire, had the said Littleton five years possession of the whole locus in quo, or only his actual pedis pos-sessio ?
In order to enable them to decide this question, I told the jury that it was necessary that they should know what was color of title, and *495 then their inquiry would be, liad Littleton Parsons five years adverse possession of the land in dispute, under color of title 1 If he had, the plaintiff would be entitled to a verdict.
Color of title I defined to be any thing which shews the extent of the occupant’s claim. I told them that an equitable title, such as a bond, a receipt, or a written contract of purchase, and finally, a parol contract of purchase, with well defined and known limits and boundaries, would be color of title, and coupled with five years adverse possession, would confer a good title in law, of granted lands. See Williams v. M’Gee, 1 Con. Rep. 84; Eifert ads. Read, 1 N. & M’C. 374 ; Roberts et al. v. Roberts, 2 JVI’O. 268.
1 advised the jury that 1 thought the case mainly depended upon Littleton Parsons’ testimony ; if he was believed, the defendants must have a verdict; if he was disbelieved, then I thought the plaintiff ought to recover.
On the question of damages, I said to the jury that if they believed that the trespasses committed by the defendants were intended to bo the assertion of a claim to the land which the defendant, Samuel, believed to be founded in right, then their verdict against him ought not to be for more than the plaintiff’s actual injury. But if they believed that the trespasses committed by the defendants were an attempt on the part of the defendant Samuel, to take that, by force, to which he knew he had neither a legal nor an equitable right, then that I thought he was a fit subject for vindictive damages. As to the other defendants, I said to the jury that they appeared to have acted throughout as the agents of Samuel, and by his command, and that therefore a verdict for nominal damages against them would, I thought, be sufficient.
The jury found for the plaintiff a general verdict for $50 damages.
The defendants appealed.
Curia, per Nott J. The Court concur in opinion with the presiding judge in his view of the law; with regard to the testimony, it was a question for the jury, and the Court see no good ground to interfere with the verdict.
Johnson and Colcock, 3s. concurred.
Irby, for the motion.
Young & Dunlap, contra.