358 F.2d 470
 The UNITEC CORPORATION, a corporation, Appellant-Appellee,
v.
BEATTY SAFWAY SCAFFOLD CO. OF OREGON, a corporation, and
Goodyear Aircraft Corporation, a corporation,
Appellees-Appellants.
 No. 19788.
 United States Court of Appeals Ninth Circuit.
 March 19, 1966.
 
 Cleveland C. Cory, Clarence R. Wicks, Charles J. McMurchie, Davies, Biggs, Strayer, Stoel & Boley, Portland, Ore., for appellant-appellee, Unitec Corp.
 Herbert H. Anderson, James V. Hurley, McColloch, Dezendorf & Spears, Portland, Ore., for appellee-appellant, Goodyear Aircraft Corp. Tassock, Portland, Ore., for appellee-appellant, Tassock, Portland, Pre., for appellee-appellant, Beatty Safway Scaffold Co.
 Before BARNES, BASTIAN and MERRILL, Circuit Judges.
 BARNES, Circuit Judge:
 
 
 1
 This is an action brought by Beatty Safway Scaffold Company of Oregon, hereinafter called 'Safway,' to recover damages upon contract claims against The Unitec Corporation based upon the furnishing of services and materials in connection with the construction or radomes for the United States Air Force at Mt. Hebo, Oregon, and Cottonwood, Idaho, and to recover damages upon negligence claims against The Unitec Corporation and Goodyear Aircraft Corporation for windstorm damage to plaintiff's scaffold which collapsed at Mt. Hebo, Oregon, in October 1962. As an outgrowth of this action, 'Goodyear' and 'Unitec' filed crossclaims against each other seeking indemnity with respect to liability for any damages awarded to Safway for the destruction of the Mt. Hebo scaffolding.
 
 
 2
 The district court's jurisdiction of this controversy was based upon diversity of citizenship (28 U.S.C. 1332, 1441). Our jurisdiction to entertain the appeals arising from the district court determinations is founded upon 28 U.S.C. 1291.
 
 
 3
 The district court entered judgment after trial to the court in favor of Safway and against Unitec on Safway's contract action, and in favor of Safway and against both Unitec and Goodyear on Safway's negligence claim. From this judgment, appeals were filed by all parties. Safway contends that the district court erroneously calculated damages to Safway's prejudice. Unitec challenges the district court's determination that it was liable under the contract and negligence causes of action. Goodyear appeals from the finding that held it liable to Safway under the negligence claim, and the finding that it was not to be indemnified by Unitec for its liability to Safway. Finally, as a result of Goodyear's assertion of right to indemnification, Unitec counter-charges that Goodyear owed it a duty of indemnification for Unitec's negligence liability to Safway.
 
 
 4
 The factual background of this three-party controversy evolves from the grant of an Air Force contract to General Electric Company for the construction of radomes at Mt. Hebo, Oregon, and Cottonwood, Idaho. A radome is a cover or dome, frequently constructed of fiberglas, which is used to protect a radar installation from natural elements. General Electric contracted with Goodyear for the furnishing and erection of fiberglas panels for the radomes. Goodyear furnished the fiberglas, and, in turn contracted with Unitec for the construction work. Unitec then entered into a contract with Safway to furnish and install or erect scaffold to assist in emplacement of the fiberglas panels at both sites.
 
 
 5
 At the Cottonwood site, Safway's performance of its contractual obligation to furnish both equipment and labor was interrupted when Safway employees refused to cross a picket line directed against Unitec's non-union employees. As a result, Unitec undertook a substantial portion of the labor related to the scaffolding operations. The effect of this change in the contractual arrangement as originally conceived is the subject of the controversy sounding in contract that was decided in the district court and now appears before us as an appeal and cross-appeal.
 
 
 6
 Radome construction at the Mt. Hebo site was interrupted for a different reason. After partial construction, a windstorm of extreme velocity apparently resulted in the delamination of the fiberglas skins of the panels, leading to the collapse of the partially-erected radome and the scaffold within it. The district court found that both Unitec and Goodyear had acted negligently in the course of the radome construction, and that their negligence was the proximate cause of the resulting damage. The court also rejected the defendants' contentions that they be relieved of liability for any negligent acts on the grounds of contributory negligence and/or act of God.
 
 
 7
 In concluding that both Unitec and Goodyear were negligent, the district court characterized both parties as 'actively' negligent. It therefore rejected Unitec's claim against Goodyear of common-law indemnification based on the distinction between 'active' and 'passive' tortfeasors. In finding both defendants liable in negligence, the district court also rejected Goodyear's claim to indemnification on the basis of contractual assumption of indemnity responsibility by Unitec in its agreement with Goodyear.
 
 
 8
 We direct our attention first to the controversies arising from the Cottonwood project.
 
 
 9
 * The principal dispute arising from the Cottonwood operations involves Safway's claims for contractual payment and Unitec's counter-claims for damages for breach of contract. At the time of contract negotiations, Safway offered Unitec a choice of two possible arrangements: (1) to supply labor and materials at a total cast of $25,500, or (2) to supply materials without labor at a cost of $14,000. Unitec accepted the total service contract, and Safway commenced operations on September 22, 1962. Two days later, however, on September 24, 1962, the picket line directed against Unitec's non-union employees forced Safway to discontinue the furnishing of a labor supply. Unitec asserts that this cessation of labor activity by Safway was a clear breach of the contractual terms which could not be excused by the doctrine of objective impossibility. We agree that this labor dispute is not a circumstance of objective impossibility. However, we do not understand Safway's position on this appeal to be that the labor dispute did excuse it from its contractual obligations. In the absence of additional circumstances, therefore, we would have no difficulty in reaching the determination that Safway is responsible for its contractual breach in failing to supply the necessary labor.
 
 
 10
 Additional factors, however, did arise. When Safway no longer was in a position to supply the labor forces for the scaffolding operations, Unitec substituted its employees. Unitec asserts that its labor costs in completing the necessary work exceeded the labor cost contracted with Safway by some $8,291.42, and that Safway is liable in this amount for its contractual breach. Safway, on the other hand, contends that at the time its employees refused to work at the picketed site, Unitec and Safway entered into a contractual modification or partial rescission of their original contract, and mutually agreed to convert the contract into the rental-only, no-labor contract previously quoted at $14,000. Under this construction of the facts, Safway would have no liability for the excess labor costs sustained by Unitec.
 
 
 11
 Both parties concede that the evidence on the question of oral modification is highly conflicting. In such situations, great reliance must be placed on the assessment of the conflicting evidence by the trier of fact, who is best situated to judge the credibility of the witnesses before him. We can only differ from his assessment if we determine that it was clearly erroneous and without support in the record. Rule 52(a), Fed.R.Civ.P. The record before us in the present case is replete with evidence in support of the district court's finding of an oral modification, and that finding is therefore not subject to reversal. The record clearly indicates that Unitec supplied its own substitute labor after September 24, 1962, without asserting any claim of a contractual breach by Safway. In fact, Unitec's first damage claim as a result of the necessity of supplying its own labor was not made until April 8, 1963, approximately five months after the Cottonwood project was completed. In addition, Unitec made no effort to notify Safway that it must resume its labor activities under the original contract after the pickets were removed from the Cottonwood site. These circumstantial factors provide ample support for the district court's conclusion that the parties entered into an oral modification of their initial agreement.
 
 
 12
 Unitec raises an alternative objection even if the finding of oral modification be sustained, namely: that no consideration supported the modification. We find this contention wholly without merit. The pre-existing duty cases cited by Unitec are not at all relevant to the situation at hand. The mutual partial rescission of a bilateral executory contract is always supported by consideration, for each party foregoes rights against the other. State v. American Surety Co., 137 Or. 394, 300 P. 511, rehearing denied, 2 P.2d 1116 (1931); Restatement, Contracts P406, comment a (1932). The United States Supreme Court succinctly disposed of a contention similar to that raised by Unitec in the present case in the following language:
 
 
 13
 'A good deal is said by appellant to the effect that this agreement was without consideration, but we need not stop to review the contention. It is enough to say that the parties, to a contract may release themselves, in whole or in part, from its obligations, so far as they remain executory, by mutual agreement, without fresh consideration. The release of one is sufficient consideration for the release of the other.' Savage Arms Corp. v. United States, 266 U.S. 217, 220, 45 S.Ct. 30, 31, 69 L.Ed. 253 (1924).
 
 
 14
 We therefore reject Unitec's assertion that Safway is responsible for damages as the result of a contractual breach. By the same token, we sustain the finding that Safway has a cause of action in contract for the services it performed under its contract as orally modified.
 
 II
 
 15
 We not turn to Safway's cross-appeal against Unitec for damages above those granted by the district court.
 
 
 16
 Four grounds of additional recovery are specified in Safway's cross-appeal:
 
 
 17
 (1) Safway was erroneously deprived of prejudgment interest on its contract causes of action.
 
 
 18
 (2) Safway was erroneously deprived of $2,100 for equipment furnished but not installed at the Mt. Hebo site.
 
 
 19
 (3) Safway was erroneously deprived of $3,200 for part performance of the labor contract at the Cottonwood site.
 
 
 20
 (4) Safway was erroneously deprived of $2,320.17 for equipment damaged and short at the Cottonwood site.
 
 
 21
 We agree with the conclusion of the district court that Safway is not entitled to prejudgment interest on any portion of its claim. No doubt at all can exist that an award of prejudgment interest is not warranted for the amount due Safway for its activites at the Mt. Hebo site. Contractual recovery for its Mt. Hebo operations, where the windstorm had destroyed the partial construction that had taken place, could only be based upon the reasonable value of Safway's services. The controlling precedent of In re McKinney's Estate, 175 Or. 28, 149 P.2d 980, 151 P.2d 459 (1944), make it patently clear that prejudgment interest cannot be assessed in the case of a claim for reasonable value of services inasmuch as the value of the services cannot be ascertained by computation or by reference to well-known standards of value. Interest can only begin to accrue in a case of this kind once the amount of the claim is established by the court. As noted by the court in McKinney's Estate, supra, nothing in Public Market Co. of Portland v. City of Portland, 171 Or. 522, 130 P.2d 624 (1942), petition for amplification of opinion granted, 138 P.2d 916 (1943), cited by Safway in its cross-appeal, leads to a contrary conclusion. In that case, the amount of the claim was easily ascertainable, as was the time of default. No need existed to ascertain or calculate the reasonable value of services performed, as exists with respect to Safway's efforts at the Mt. Hebo site.
 
 
 22
 Safway insists that even if In re McKinney's Estate, supra, precludes recovery of prejudgment interest where it is necessary to calculate reasonable value of services rendered, it does not preclude recovery of prejudgment interest where a claim is based upon the contract rate of recovery. Safway urges it is entitled to prejudgment interest, in any event, on the $14,000 contract amount for the equipment supplied at the Cottonwood site. This contention overlooks, however, the dispute that existed over the question of an oral modification and the related counterclaim for breach of contract asserted by Unitec-- neither determined until this case becomes final. Further uncertainty in the amount of Safway's claim also resulted from the uncertainty of when payment was to be made, and the possibility of a set-off for the labor supplied during the period subsequent to Safway's breach and prior to the alleged oral modification. In short, the uncertainty that beclouded each of Safway's claims against Unitec results in the inapplicability in the present case of the narrow rule announced in the Public Market Co. case, supra.
 
 
 23
 The district court denial of Safway's claim to prejudgment interest is sustained.
 
 III
 
 24
 We likewise find no basis on which to reverse the findings of the district court with respect to Safway's claims for (1) equipment furnished but not installed at Mt. Hebo, (2) part performance of the labor portion of the Cottonwood contract, and (3) equipment damaged and short at Cottonwood.
 
 
 25
 Safway's first claim is predicated upon Unitec's alleged 'admission,' and the district court's express finding, that Safway was to be compensated for the reasonable value of the Mt. Hebo services on the theory that 65 per cent of the erection had been completed. Safway contends that this form of evaluation results in noncompensation for work done that was not reflected in the erection, such as equipment not yet installed. We find little that justifies the literal interpretation of the district court's findings as urged by Safway. It appears more likely to us that the district court, in awarding Safway the reasonable value of its Mt. Hebo services, considered all elements of Safway's performance before concluding that it should be compensated on a basis of 65 per cent completion of the scaffold erection. Only a laborious and strained reading of the district court's conclusions could sustain Safway's contention that it was compensated only for those activities feflected in the actual erection, and not for those activities involving the equipment not yet installed. We therefore sustain the district court's disallowance of additional recovery, over and above what was awarded initially, for equipment furnished but not installed at Mt. Hebo.
 
 
 26
 Nor can we award additional damages to Safway for its two days of labor activities at Cottonwood. We agree with Safway that its labor activities, no matter how brief, were compensable. But Safway has failed to demonstrate that the oral modification or partial rescission that arose as a result of the picketing at tht Cottonwood site did not absorb any obligation for Safway's minimal labor efforts from September 22, 1962, to September 24, 1962. It seems reasonable and likely that the parties, in reverting from the complete performance contract of $25,500 to the rental-only, no-labor basis of $14,000, contemplated that Safway would absorb the cost of its two-day labor activities. In the absence of an express reservation of the right to recover for these services, we find support for the trial court's finding that the oral modification or rescission was intended to waive any rights that Safway possessed for the value of labor services rendered on the Cottonwood project.
 
 
 27
 Safway's final claim for additional damages on cross-appeal involves the district court's purported oversight in failing to award damages for equipment damaged and short at Cottonwood. We agree that Unitec's failure to account for all materials used at the Cottonwood site might result in a damage award for the value of the equipment damaged and short. Had the district court simply ignored this claim, we would agree that Safway would be entitled to an upward revision in its damage award. But we find the record does not support the contention that the district court failed to consider this claim for additional damages. Both in its Memorandum Decision (Cl.Tr. 65, Count Two, Issue D), and in its subsequent Supplemental Decision (Cl.Tr. 71, Count Two, Issue D), the district court indicated that it gave consideration to Safway's claim, but found it was too confusing, uncertain, and perplexing to sustain. Thus on the facts presented, the district court determined that Safway had failed to sustain its burden of proof on this element of damages. Under well known rules, we are bound by this trial court conclusion unless we deem it clearly erroneous. Rule 52(a), Fed.R.Civ.P. We cannot find that the district court clearly erred in concluding that Safway did not sustain the burden of proof on this damage issue. We therefore reject Safway's claim for additional damages for equipment damaged and short at Cottonwood.
 
 IV
 
 28
 We next turn to Safway's negligence claims against both Unitec and Goodyear.
 
 
 29
 The district court found, after thorough consideration of all the conflicting evidence presented by the parties, that both Unitec and Goodyear had acted negligently in the construction of the Mt. Hebo radome, and that these negligent acts were the proximate cause of the damage to Safway's scaffolding equipment. We note initially that the conflict in the evidence is extensive and that much of this conflicting evidence is based upon opinion and conjecture. But our task as a reviewing body is limited to an examination of the record to determine if substanitial evidence supports the findings of the trier of fact. We are not called upon to weigh the conflicting evidence and to evaluate its credibility de novo. The very nature of a reviewing court, removed from a vantage point where credibility of individual witnesses can be effectively judged, prohibits us from extending our review beyond a determination of whether the trier's findings are supported by substantial evidence.
 
 
 30
 In the record before us, although the parties view the relevant facts with notable differences, we find substantial evidence to support the district court's conclusion of fact. The record is clear that, in the course of radome construction, heavy winds hit the uncompleted structure on both September 28, 1962, and October 7, 1962. It is also clear that the wind pressure presented an increased hazard as the radome shell increased in height and approached its equator. Early in the morning on October 11, 1962, the radome collapsed as a result of the wind pressure, and its collapse resulted in the destruction of Safway's scaffolding equipment erected inside the radome bubble. Appellants contend, and the bulk of the evidence they offered at trial purported to demonstrate, that the destruction was the result of an unprecedented, unforeseeable hurricane with wind velocities in excess of 170 miles per hour. Appellants accordingly contend that Safway failed to prove a prima facie case of negligence against either defendant because the evidence could not support a finding that there existed a negligent act or omission.
 
 
 31
 It is possible to so construe the evidence offered in support of the position advanced by appellants. But the district court did not so construe it, and we are unauthorized to substitute our judgment for that first-hand evaluation. Substantial evidence was presented by Safway that the extreme wind velocities did not occur until sometime on October 12, 1962, some 36 hours after the destruction of the radome and scaffolding. Safway contended, and the district court agreed, that the winds which caused the property destruction were more nearly in the range of 90 to 100 miles per hour, and that the events of September 28, 1962, and October 7, 1962, had made it patently clear to both Unitec and Goodyear that great risks attended continued radome construction without first supplying additional protective stays or supports. The appellants' failure to install additional chordal cables or a 'spider cabel,' or some other form of reinforcing support where the dangers of extreme winds were apparent by reason of the harrowing events of September 28, 1962 and October 7, 1962, is sufficient evidence to support a prima facie case of negligence. Substantial evidence thus exists of negligent acts and omissions of appellants, and it is reasonable to conclude that such acts or omissions were the proximate cause of the ensuing destruction.
 
 
 32
 Nor can we reverse the findings of liability for negligence against Unitec and Goodyear on the basis of the additional defenses and obections raised by the appellants. The record supports the district court's conclusion that proof of contributory negligence failed, both on the ground of insufficient evidence that Safway negligently delayed in providing its services, as well as an absence of a showing that any such alleged delay was causally related to the destruction that thereafter occurred.
 
 
 33
 Nor is there any basis for reversal advanced by reason of the district court's liberal admission of opinion evidence. Admission of opinion evidence is a matter largely within the discretion of the trial court, and only an abuse of that discretion can result in possible reversal. Salem v. United States Lines Co., 370 U.S. 31, 35, 82 S.Ct. 1119, 8 L.Ed.2d 313 (1962); Montana Railway Co. v. Warren, 137 U.S. 348, 353, 11 S.Ct. 96, 34 L.Ed. 681 (1890); Spring Co. v. Edgar, 99 U.S. 645, 658, 25 L.Ed. 487 (1878); Cohen v. Western Hotels, Inc., 276 F.2d 26 (9th Cir. 1960); Frank's Plastering Company v. Koenig, 341 F.2d 257, 260-261 (8th Cir. 1965); Krizak v. W. C. Brooks & Sons, Inc., 320 F.2d 34, 41-42 (4th Cir. 1963). 32 C.J.S. Evidence 449 (1964); McCormick, Evidence 22 (1954). Moreover, where a controversy is tried to the court, and not to a jury, a showing of an abuse of the trial court's discretion becomes an even more imposing task. Where the court is the sole trier of fact, where is even less reason to exclude it. Thus we find no grounds for reversal in the district court's admission of opinion evidence on the causes of the radome's collapse and scaffolding damage.
 
 
 34
 We sustain the district court's holding that the damage to Safway's property was the result of the negligence of both Unitec and Goodyear.
 
 V
 
 35
 The final question raised by this series of appeals and cross-appeals involves the possible indemnification of one torfeasor for the negligence liability of the other. Both Unitec and Goodyear contend that the district court erred in not finding an obligation to indemnify; Unitec urges such an obligation ran from Goodyear to Unitec, and Goodyear urges that such an obligation ran from Unitec to Goodyear.
 
 
 36
 Unitec's claim to a right of indemnification is based entirely on the common-law precept that a passive tortfeasor can recover over in a third-party action against an active tortfeasor. Unitec argues at length that its negligence was solely of a passive nature, that it merely followed the directions and specifications laid out in Goodyear's plan of design. This contention of Unitec was rejected by the district court on the grounds (1) that Unitec did not follow the specifications, (2) that one following instructions of another remains responsible if a dangerous instrumentality is involved, and (3) that Unitec was not merely following the instructions of another once it had been forewarned of the dangers involved in further construction. The District court thus concluded that both Unitec and Goodyear were active tortfeasors. We agree with that determination. In light of this holding, the common-law rule permitting a passive tortfeasor to sue for indemnification and obtain judgment against an active tortfeasor has no application to this controversy. Unitec is not entitled to indemnity from Goodyear.
 
 VI
 
 37
 Goodyear's action for indemnity against Unitec is not based upon the common-law distinctions between active and passive tortfeasors, but rather upon an express contractual provision in the agreement entered into between Goodyear and Unitec. This contract (Ex. 2) provides in relevant part as follows:
 
 
 38
 '(A) Seller (Unitec) shall indemnify and save purchaser harmless at all times against any liability. Contributions or taxes payable under any of said laws and on account of any and all claims, damages. Losses, litigation, expenses, counsel fees and compensation arising out of injuries (including death) sustained by, or alleged to have been sustained by, the servants, employees, or agents of purchaster or seller, its subcontractors or materials men and from injuries (including death) sustained by, or alleged to have been sustained by, the public, servants, employees, agents of the public, any or all persons on or near the work, or by any other person or property, real or personal. Occasioned in whole or in part by the acts or omissions of seller, any subcontractor, material men, or anyone directly or indirectly employed by them or any of them while engaged in the performance of this purchase order.
 
 
 39
 '(B) Seller shall maintain at all times public liability, property damage, and employers' liability insurance, as herein provided. To protect seller and purchaser from any and all of the foregoing risks and from any and all claims under such workmen's compensation laws.'
 
 
 40
 The district court concluded that the contract was not sufficiently explicit in its indemnification requirements to hold Unitec responsible for Goodyear's acts of negligence. With this conclusion we are unable to agree.
 
 
 41
 In our view, a reasonable reading of the above provisions leads to the conclusion that the indemnification covers claims arising from injury to any other person or property occasioned in whole or in part by any act or omission of Unitec or its agents. The district court concluded, and we agree, that Unitec's acts or omissions were partially responsible for the damages that occurred to Safway's property. By express contractual design, and in the absence of a contrary public policy or unfair bargaining positions, these parties intended a certain result and therefore must be considered as having themselves defined their rights.
 
 
 42
 Provision 'B', quoted above, clearly indicates that Goodyear intended that Unitec or its insurer protect Goodyear from liability such as that which occurred as a result of the Mt. Hebo windstorm. This provision can only have meaning if it is construed as a measure to protect Goodyear against loss caused by its own negligence. Where the intent of such an indemnity clause is clear, courts must give to that clause its fair meaning. Booth-Kelly Lumber Co. v. Southern Pacific Co., 183 F.2d 902, 20 A.L.R.2d 695 (9th Cir. 1850).
 
 
 43
 It is by now well established that indemnification will be ordered in cases where the indemnitee as well as the indemnitor has been negligent, even in the absence of an explicit contractual agreement to that effect, when to hold otherwise would render the contract of indemnity meaningless. Booth-Kelly Lumer Co. v. Southern Pacific Co., supra; Southern Pacific Co. v. Morrison-Knudsen Co., 216 Or. 398, 338 P.2d 665 (1959); Union Pacific Railroad Co. v. Bridal Veil Lumber Co., 219 F.2d 825 (9th Cir. 1955); Miller and Company of Birmingham v. Louisville & N.R. Co., 328 F.2d 73 (2th Cir. 1964); Anthony v. Lousisiana & Arkansas Railway Co., 316 F.2d 858 (8th Cir. 1963); Seaboldt v. Pennsylvania Railroad Co., 290 F.2d 296 (3rd Cir. 1961). And cf. Union Pacific Railroad Co. v. Ross Transfer Co., 64 Wash.2d 486, 392 P.2d 450 (1964). This is such a case, for unless Unitec is required to indemnify Goodyear notwithstanding Goodyear's negligence, the contract of indemnity would afford Goodyear no protection which it did not already possess. This is particularly so where, as in this case, the parties have negotiated a contract price which reflects that one party (Unitec) is to bear the cost of premiums for liability insurance for any acts of negligence of either one or both of the parties to the contract.
 
 
 44
 The cases cited by the district court in denying indemnity to Goodyear because of its own negligence (C.T. p. 72) are distinguishable. In both Southern Pac. Co. v. Layman, 173 Or. 275, 145 P.2d 295 (1944) and Glens Falls Indemnity Co. v. Reimers, 176 Or. 47, 155 P.2d 923 (1945), the indemnitee sought indemnity when it alone had been negligent and the indemnitor had been free from fault. A different rule applies when both parties have been negligent, as illustrated by the cases cited, supra. Nor are we persuaded by the attempt to distinguish Southern Pacific Co. v. Morrison-Knudsen Co., supra, with the statement that 'the indemnity demnity provision in Morrison-Knudsen, into which the Oregon Court read a covenant of indemnity against the indemnitee's negligence, bears no resemblance to the provision here under scrutiny.' (C.T. p. 72.) The district court's statement leaves us unenlightened as to the distinguishing features between this case and Morrison-Knudsen which he found to be controlling. We agree that the factual situations in the two cases are not precisely identical, but we have found no justification for declining to apply the rule of Morrison-Knudsen to this case.
 
 
 45
 The district court's conclusion of law to the effect that Unitec did not contract to indemnify Goodyear for liability for negligence cannot be sustained. In this respect, the judgment of the district court is reversed. In all other respects, the judgment is affirmed.
 
 
 46
 The case is remanded to the district court for action consistent with this opinion.