**INSURANCE SERVICES OF BEAUFORT, INCORPORATED, Plaintiff–Appellant,**

v.

**The AETNA CASUALTY AND SURETY COMPANY, Defendant–Appellee,**

**and**

**Aetna Life Insurance Company, Incorporated; Aetna Life Insurance and Annuity Company; the Standard Fire Insurance Company; the Automobile Insurance Company of Hartford Connecticut; Aetna Casualty and Surety Company of Illinois, Defendants.**

**INSURANCE SERVICES OF BEAUFORT, INCORPORATED, Plaintiff–Appellee,**

v.

**The AETNA CASUALTY AND SURETY COMPANY, Defendant–Appellant,**

**and**

**Aetna Life Insurance Company, Incorporated; Aetna Life Insurance and Annuity Company; the Standard Fire Insurance Company; the Automobile Insurance Company of Hartford Connecticut; Aetna Casualty and Surety Company of Illinois, Defendants.**

**Nos. 91–1677, 91–1678.**

United States Court of Appeals, Fourth Circuit.

Argued Feb. 6, 1992.

Decided June 1, 1992.

Hutson S. Davis, Jr., Davis, Tupper & Griffith, P.A., Beaufort, S.C., argued, for plaintiff-appellant.

Thomas C. Salane, Turner, Padget, Graham & Laney, P.A., Columbia, S.C., argued, for defendant-appellee.

Before WILKINS and HAMILTON, Circuit Judges, and OSTEEN, United States District Judge for the Middle District of North Carolina, sitting by designation.

## OPINION

HAMILTON, Circuit Judge:

The Insurance Services of Beaufort (ISOB), appeals from the order of the district court awarding no damages after finding in its favor on the issue of liability. The Aetna Casualty and Surety Co., Inc. (Aetna)[1] cross-appeals from the order of the district court finding it liable for cancellation of ISOB's agency contract.

This appeal presents the issues of: (1) whether Aetna is liable under S.C.Code Ann. § 38–77–940 (1976) for terminating an unprofitable insurance agency because of the volume of automobile insurance that agency wrote, and (2) whether the district court erred in failing to award damages after a finding of liability, or in failing to hold a full hearing to determine the amount of damages.

We find no error in the district court's finding of liability and affirm its decision in that respect. It was error, however, for the district court to fail to hold a hearing on the issue of damages and its decision in that respect is vacated.

## I.

ISOB is an independent insurance agency located in Beaufort, South Carolina with satellite offices in the immediate area. ISOB represented Aetna in the sale of auto, home, property, health and life insurance. The relationship was governed by agency agreements which were cancelable upon written notice. The various Aetna insurance lines offered by ISOB are marketed through two divisions. The first of these, which Aetna did not cancel and ISOB continues to write, is the Commercial Insurance Division. This division includes life, health, commercial, and accident insurance. The second division, which Aetna did cancel, is the Personal Lines Division. This division included automobile, homeowners, fire, marine, personal umbrella and excess insurance. Aetna gave written notice that, effective on December 1, 1989, the agency agreement covering the personal lines would be canceled. This date was later extended to March 1, 1990, as a result of widespread damage caused by Hurricane Hugo. The stated reason for this termination was that ISOB was unprofitable overall on the personal lines of insurance the agency sold.

In the late 1980's, Aetna began to accumulate losses from its South Carolina operations. In order to minimize these losses, Aetna implemented a plan under which it sought to eliminate agencies and agents who failed to meet prescribed profitability standards. ISOB was one of 16 South Carolina agencies terminated under this plan. The plan mandated that an agency must achieve a loss goal of no more than 66% of premiums for all insurance lines over a three-year period beginning in 1986 and going through 1988. Although ISOB was profitable in all personal lines of insurance except auto, ISOB's loss ratio for the three-year period was 81.3% overall, and the agency agreement was terminated on this basis. ISOB's personal lines loss ratios by category were: Dwelling: 38.6%, Auto: 105%, and all other: 37.1%. Despite ISOB's efforts to improve losses overall, its losses were $231,986 for 1986, $27,177 for 1987 and $295,315 for 1988.

ISOB brought this action in state court seeking a declaration of its rights and an equitable order to compel Aetna to reinstate ISOB's agency contract on the grounds that Aetna violated S.C.Code Ann. § 38–77–940 (Law. Co-op.1976), which provides in part:

No insurer of automobile insurance shall cancel its representation by an agent primarily because of the volume of automobile insurance placed with it by the agent on account of the statutory mandate of

**1.** The defendants, Aetna Life Insurance Company, *et al.* were dismissed from this action by the district court because they did not issue auto insurance and were, therefore, not covered by S.C.Code Ann. § 38–77–940 (1976), under which this action by ISOB was brought.

coverage [dictated in S.C. Code Ann. § 37–77–920 (Law Co-op.1976)] nor because of the amount of the agent's automobile insurance business which the insurer has deemed it necessary to reinsure.... [2]

Aetna removed the case to federal court on the basis of diversity.

The district court held, in its order dated November 7, 1990, that Aetna was merely looking for a way around § 38–77–920 and that Aetna's profitability criteria was a "mere facade." (Order of 11/7/90, J.A. 440). In its declaratory judgment, the district court found that Aetna violated § 38–77–940, but held that it was not possible to write an equitable order to compel Aetna to reinstate the agency contract because Aetna had, since the case was filed, completely withdrawn from the S.C. auto insurance market as it was permitted to by § 38–77–940. The district court noted, however, that ISOB might be entitled to damages and granted ISOB fifteen days to submit a brief detailing damages it should receive.

In its subsequent order of April 2, 1991, the district court issued its findings concerning ISOB's damages. Initially, the district court determined that it had the power to consider damages even though the case was brought in equity. It did this under 28 U.S.C. § 2202, which permits "further relief" after a declaratory judgment. The district court, however, could not find an appropriate theory under which to award damages. The district court noted that ISOB was under a duty to mitigate its losses and it had the ability to mitigate by placing customers with other insurance carriers. Because of this and the fact that ISOB submitted no proof as to the damages actually mitigated, the district court found it had insufficient evidence to award ISOB the compensatory damages it sought. Since the district court could not find an appropriate award of compensatory damages it found no basis on which to award punitive damages.

ISOB appeals on the grounds that its brief presented adequate evidence of damages and that it was, therefore, entitled to an award. ISOB also asserts that the district court failed to consider its request for reinstatement of the insurance lines, other than automobile insurance, within the Personal Lines Division. Finally, ISOB claims that it was entitled to nominal damages and that nominal damages could support an award of punitive damages. Alternatively, ISOB asserts that it was entitled to a full hearing on the issue of damages. Aetna cross-appeals on the grounds that it was error for the district court to find a violation of § 38–77–940 when it canceled ISOB's personal lines contract for unprofitability reasons.

## II.

Aetna bases its claim of error on *Dixon v. Nationwide Mutual Ins. Co.*, 784 F.2d 1176 (4th Cir.1986), *aff'd en banc*, 800 F.2d 422 (4th Cir.1986). In *Dixon*, we found no error in the district court's instruction to the jury that it was not a violation of § 38–77–940 to terminate an insurance agent for unprofitability, even if such unprofitability was a result of writing automobile insurance under the South Carolina mandate-to-write laws. We also held that it was proper to refuse "to instruct the jury that South Carolina law forbids the firing of an insurance agent for unprofitability linked to the volume of mandated automobile coverage." *Dixon*, 784 F.2d at 1181.

Aetna correctly argues that *Dixon* specifically authorizes it to cancel agency agreements for unprofitability of the agency. An insurance company may not, however, cancel an agency agreement if the true reason for the cancellation is to reduce the volume of auto insurance the company carries. A contrary holding would render § 38–77–940 dead letter law. In *Dixon*, the insurance agent was very unprofitable, losing some $400,000 in one year. The jury found that he was fired because of his

---

**2.** S.C. is a "mandate to write" state, meaning that no insurer may refuse to write an auto insurance risk from any applicant and an agent may not refuse a request to write under a particular company. S.C.Code Ann. § 38–77–920 (Law.Co.Op. & Supp.1989).

unprofitability as opposed to the large volume of auto insurance business he wrote. In this case, the district court found that the agency contract covering the personal lines was terminated, not because of its unprofitability, but because of the volume of auto insurance which the agency wrote. Aetna is entitled to terminate agencies and fire agents for unprofitability even when that unprofitability is linked to auto insurance volume. Aetna is not entitled, however, to terminate an agency because of that volume. The district court was fully aware of *Dixon,* however, it reached a different factual determination from that reached by the jury in *Dixon.*

The district court based this finding on several excerpts of testimony. An Aetna regional general manager stated in a memo that: "Most of our agents have attempted to work with us at least some of the time, [b]ut the take all comers automobile environment hampers their efforts and ours." (Order of 11/7/92, J.A. 430). This same memo emphasized that the auto business was causing Aetna's losses. At trial, the general manager testified that the memo led to the ultimate decision to terminate agencies, and that "South Carolina is a good place to take a stand...." (*Id.* at 431). Other parts of the testimony also indicate that Aetna's emphasis was on reducing its auto volume: "we weren't soliciting automobile policies;" (*Id.* at 432) "that's the 64 million dollar question [auto insurance];" and the agent would "have to be creative" to bring down the loss ratios. (*Id.* at 434). The district court also found several exhibits convincing. One exhibit indicated that an account representative congratulated an agent for his low ratio of auto policies to other lines. Another exhibit, which listed answers to possible questions a to-be-terminated agent might ask, indicates that these "agency management steps" were a result of a moratorium on auto insurance rates in South Carolina. (*Id.* at 436).

It is the fact finder's duty to determine the credibility and meaning of such statements, and the district court determined that Aetna's purpose was to reduce auto volume as opposed to making the decision based solely on profitability. Though the evidence seems close on this issue, even if we would find differently, we are not at liberty to substitute our views of the weight of evidence for the views of the district court. *Anderson v. City of Bessemer City, N.C.,* 470 U.S. 564, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985). The district court's factual determination that the purpose of Aetna was to circumvent § 38–77–940 may not be disturbed absent clear error. *White v. Federal Express Corp.,* 939 F.2d 157, 159 (4th Cir.1991). We, therefore, affirm the district court's decision with respect to its finding of liability.

## III.

Aetna argues that ISOB was not entitled to consideration of damages because they proved no damages at trial and because ISOB sought relief in equity court. It is clear that money damages can be an appropriate remedy in a wrongful termination of agency action, and that the trial of such a case in equity does not "foreclose the award of damages." *Insurance etc. v. South Carolina Ins. Co.,* 271 S.C. 289, 247 S.E.2d 315, 318 (1978).

As the district court stated: "it is clear from the record that it [ISOB] lost some [commission income]." (Order of 4/2/91, J.A. 451). The district court was merely trying to determine the extent of those damages. 28 U.S.C. § 2202 permits a court to grant "further necessary and appropriate relief based on a declaratory judgment or decree ... against any adverse party whose rights have been determined by such judgment." 28 U.S.C. § 2202.[3] This relief "need not have been demanded *or even proved* in the original action for declaratory relief." *Edward B. Marks Music Corp. v. Charles K. Harris Music Pub. Co.,* 255 F.2d 518, 522 (2d Cir.), *cert. denied,* 358 U.S. 831, 79 S.Ct. 51, 3

---

**3.** ISOB specifically requested a "declaratory judgment" of its rights, thus 6350 35 9 invoking application of the Declaratory Judgment Act.

L.Ed.2d 69 (1958) (emphasis added), *cited in Horn & Hardart Co. v. National Rail Passenger Corp.*, 843 F.2d 546 (D.C.Cir. 1988). "The power of the court to retain jurisdiction to give complete and effectual relief is well established, and it follows without any serious controversy that the court may make such further orders to give effect to a declaratory judgement as shall seem meet and proper." Anderson, *Actions for Declaratory Judgments* § 451 (2d ed. 1951 and Supp.1991). The district court clearly had the power to hear the issue of damages after deciding the issue of liability and declaring the parties' rights in an equity action.

■■■ ISOB asserts that the district court erred in failing to hold a full hearing on the issue of damages. The district court only requested and considered briefs from the parties on the issue of damages. 28 U.S.C. § 2202, under which the district court is entitled to award damages after a declaratory judgment action, provides:

> Further necessary or proper relief based on a declaratory judgment or decree may be granted, *after reasonable notice and hearing,* against any adverse party whose rights have been determined by such judgment. (emphasis added).

ISOB failed to object to this briefing procedure beforehand and participated without objection to the submission of briefs. Neither party requested, before judgment was issued, an oral hearing on the issue of damages. It was not until after the district court issued its findings with respect to damages that ISOB demanded a hearing in a motion for reconsideration. If a party fails to make a timely objection to an error, that issue is not preserved for review. *See, e.g., United States v. One 1971 Mercedes Benz,* 542 F.2d 912 (4th Cir.1976); *see also, Skogen v. Dow Chemical Co.,* 375 F.2d 692 (8th Cir.1967) (A party cannot wait until after the verdict is rendered and then object to a procedural error). If a party has no opportunity to object at the time the error is made, failure to object does not prejudice him. Fed.R.Civ.P. 46. The original order of the district court gave no indication that a hearing would not be held.

It only stated that: "this court will award damages for violation of the statute ... [t]he plaintiff will have (15) fifteen days from the date of this order to submit a brief detailing the damages it should receive." (Order of 11/7/90, J.A. 441). ISOB did not indicate an awareness in this brief that a hearing was not going to be held. In this case, ISOB had no reason to know a hearing would not be granted until the district court issued its order of April 2, 1991 which definitively found no basis for damages. As such, ISOB had no opportunity to object to the lack of a hearing until after this order. ISOB's objection to the lack of a hearing in its motion for reconsideration was, therefore, timely made.

■■■ Error in the application of the statutory requirements of the Declaratory Judgment Act is an error in conclusion of law which is reviewed *de novo*. It was error, as a matter of law, for the district court to fail to hold a hearing on the issue of damages. The requirement of a "hearing" was first added to the Declaratory Judgment Act when it was revised in 1948. Judicial Reformation Act, ch. 646, 62 Stat. 964 (1948). The congressional reports related to the 1948 Act do not discuss the specific reason for including the words "and hearing." It is, therefore, appropriate to resort to rules of statutory construction. A word not defined in a statute is to be used as it is commonly and ordinarily understood. The word "hearing" is commonly understood to be a "proceeding of relative formality, generally public, with definite issues of fact or of law to be tried, in which witnesses are heard and parties proceeded against have a right to be heard." *United States v. Prudential Ins.,* 944 F.2d 1149, 1155 (3d Cir.1991) (quoting *Black's Law Dictionary* 649 (5th ed. 1979)); *United States v. Anderson,* 798 F.2d 919, 930 (7th Cir.1986); *see also, In re Center Wholesale, Inc.,* 759 F.2d 1440, 1449 (9th Cir.1985) ("hearing" means a full hearing to the court); *American Export & Isbrandtsen L. v. Federal Maritime Comm'n,* 334 F.2d 185, 194 (9th Cir.1964) (a "hearing" is normally a proceeding involving the submission of evidence); *Producers Livestock Marketing Assoc. v.*

*United States,* 241 F.2d 192, 195 (10th Cir. 1957) ("hearing" is normally a full hearing affording opportunity for the parties, by evidence and argument, to state their positions). An action under the Declaratory Judgment Act is regarded as an "ordinary civil action" subject to all of the Federal Rules of Civil Procedure. Charles Wright, Arthur Miller, Mary Kane *Federal Practice and Procedure,* § 2768 at 746–7 (1983). It goes almost without saying that in an ordinary civil action, a court is not entitled to rule on contested damages from briefs without a hearing.[4] Analogy to other provisions of the federal rules also indicates that submission of briefs in lieu of a hearing was error. Under rule 7, a "hearing" means some form of proceeding, *see* 28 U.S.C. Fed.R.Civ.P. 7, n. 6, and under rule 54, a default judgment may not be entered without a full hearing unless the damages are liquidated or otherwise uncontested. *See* 28 U.S.C. Fed.R.Civ.P. 55; *United Artists Corp. v. Freeman,* 605 F.2d 854 (5th Cir.1979).

We find that the district court's use of briefs alone to decide the issue of damages, without either a hearing or sufficient evidence in the record, was error of law in that this procedure misapplied the clear contemplation that a hearing is necessary to grant further relief under 28 U.S.C. § 2202. We, therefore, remand this case to the district court for a hearing on damages. Because the district court will rehear the parties on the issue of damages, we find it unnecessary to consider whether the district court erred in its denial of damages based on the parties' briefs.

■ On remand, the district court should consider that a plaintiff might be entitled to nominal damages if he establishes a wrong and a loss thereby, even if actual damages cannot be precisely ascertained. 25 C.J.S. *Damages* § 12 (1955); *Hinson v. A.T. Sistare Constr. Co.,* 236 S.C. 125, 113 S.E.2d 341 (1960). The recovery of nominal

damages is particularly appropriate to vindicate the violation of a right, such as is found in a declaratory judgment action, where injury is shown but damages cannot be proven. 25 C.J.S. *Damages* § 8 (1955); *Gray v. Southern Facilities, Inc.,* 256 S.C. 558, 183 S.E.2d 438, 442 (1971). ISOB did not specifically request nominal damages, however, a specific request is not required. An averment of general damages is sufficient to state a claim for nominal damages. *See, e.g., Kline Iron & Steel Co. v. Superior Trucking Co.,* 261 S.C. 542, 201 S.E.2d 388 (1973); 25 C.J.S. § 8 (1955).

■ The district court should also consider that nominal damages can, in some circumstances, support an award of punitive damages. *Hinson v. A.T. Sistare Constr. Co.,* 236 S.C. 125, 113 S.E.2d 341 (1960); *see also* Ghiardi, James A., Kircher, John J. *Punitive Damages: Law and Practice,* § 537 (Callaghan 1984 and Supp. 1991) (Noting that, in most jurisdictions, an award of punitive damages is sustained by a nominal damage award).

■ Lastly, the district court should consider ISOB's request for an injunctive order requiring Aetna to reinstate insurance lines within the Personal Lines Division, other than automobile, which were canceled. As the district court noted, it could not require Aetna to reinstate the automobile insurance line because Aetna had completely withdrawn from the South Carolina automobile insurance market. Although ISOB continues to write life, health and accident, and commercial insurance; all insurance lines under the "Personal Financial Security Division" were canceled. The policies within this division, other than automobile were: homeowners insurance, fire insurance, inland marine insurance, and personal umbrella and excess insurance. (Order of 11/7/90 J.A. 425; Tr. at 11; Appellant's Br. 4). ISOB properly requested this relief in its brief on damages,

---

4. The circumstances here are distinguished from what appears to be the usual situation in a declaratory judgment action: That is, the factual issues involving damages are adequately presented during the trial. As the district court noted: after trial it had insufficient information

to make an award of "further relief" under 28 U.S.C. § 2202. A subsequent hearing may not always be required where the factual issues concerning such further relief are sufficiently developed at trial, because the parties would have had their hearing at trial.

and it was error for the district court to fail to consider this theory of recovery. *Ryland v. Shapiro,* 708 F.2d 967, 973 (5th Cir.1983); *Daly v. Costle,* 661 F.2d 959 (D.C.Cir.1981) (Failure to consider damage claim is reversible error); *Unitec Corp. v. Beatty Safway Scaffold Co. of Oregon,* 358 F.2d 470, 476 (9th Cir.1966) (Ignoring a portion of a claim for damages is reversible error); *General Construction Co. v. Hering Realty Co.,* 312 F.2d 538 (4th Cir.1963) (Failure to consider a claim, in general, is reversible error).

We, therefore, affirm the district court's decision with respect to the finding of liability, vacate the district court's decision on the issue of damages, and remand for further proceedings consistent with this opinion.

AFFIRMED IN PART AND VACATED AND REMANDED IN PART.