19337

Margaret D. ALDERMAN, Appellant, v. Charles F. COOPER et al., Respondents

(185 S. E. (2d) 809)

*Isadore S. Bernstein, Esq.,* of Columbia, *for Appellant,* cites:

*Edwin H. Cooper, Jr., Esq.,* of Columbia, *for Respondent, Charles F. Cooper,* cites:

*Messrs. Samuel R. Preston, and Edwin P. Gardner,* of Columbia, *for Respondent-Trustees,* cite:

*Isadore S. Bernstein, Esq.,* of Columbia, *for Appellant,* in Reply.

December 14, 1971.

*Per Curiam:*

This controversy concerns the Will of the late John Hughes Cooper, a well-known member of the South Carolina Bar, which was admitted to probate in 1945. The Will appointed certain relatives as trustees of testator's estate and charged all of his property with the payment of monthly income to his brothers and sisters and to their respective spouses during their lives. Upon the death of all of the life beneficiaries (or earlier settlement of the estate as provided by the Will), the remainder of testator's estate was devised to fourteen nieces and nephews to be equally divided among them.

The plaintiff is a niece, and the defendant Charles F. Cooper is a nephew of the testator. The remaining three defendants are nephews and are trustees of the estate. Hereafter, we refer to Charles F. Cooper as the defendant and the other defendants as trustees.

In 1955 and in 1959 plaintiff executed instruments by which she assigned all of her interest in the estate to the defendant, basically, as security for advances made and to be made by her to him. The second of these instruments provided that the assignment should become absolute unless plaintiff should repay all sums advanced, with interest at

6%, by March 1, 1965. Then, on April 27, 1966, plaintiff executed an instrument whereby she undertook to transfer all of her interest in the trust estate to the defendant absolutely.

This instrument recited that pursuant to the previous assignment agreements the defendant had from time to time advanced to plaintiff the sum of $55,800.00, and, quoting from the instrument "the said Margaret D. Alderman has not repaid any of said amount, or any interest thereon." In this equitable action to set aside this instrument for fraud in its procurement and for an accounting, the circuit court found that this recital "is a completely erroneous and inaccurate statement and is shown to be erroneous and inaccurate by the sworn testimony of Charles F. Cooper. Mr. Cooper had in fact repaid himself large sums of money and large amounts of stocks by appropriating to himself Margaret Aldermans' distributive share of the John Hughes Cooper estate. In all probability at the time of the signing of this agreement, if the value of the money and stocks that Mr. Cooper had received that belonged to Margaret Alderman were offset against the alleged debt of Fifty-five Thousand Eight Hundred ($55,800.00) Dollars plus interest, Margaret Alderman would not owe Mr. Cooper anything."

The 1966 assignment was adjudged void, the 1959 security instrument was reinstated (without its time limitation), and the case was remanded to the master to state the account between the parties. The plaintiff is aggrieved by the failure of the court to calculate, from the evidence reported, the amount due her by the defendant, by the court's failure to award her judgment against the trustees, and by the instructions given to the master for ascertaining the amount due, and only she has appealed. Plaintiff's principal complaint is that the court's instructions to the master permit the defendant to discharge his obligation to her, *pro tanto,* by surrendering stock which he has received in exchange for her stock pursuant to improvident (in the light of hindsight) corporate mergers, and which is not nearly so valuable as

was the stock which the defendant acquired from the trustees some ten years prior to the decree. She contends that the court's findings import conversion of her property by the defendant, and that she is entitled to its value. We think that the foregoing quotation from the decree, and the following additional passages, fully support this contention.

"The difficulty in this case arises from the fact that when Charles F. Cooper and his first cousin, Margaret D. Alderman, entered into the agreement dated April 27, 1966, on the day after she returned home from the alcoholic sanitarium, Charles F. Cooper and the Trustees of the John Hughes Cooper estate had some substantial important information concerning the financial status of the John Hughes Cooper estate that Margaret Alderman did not have. In addition to this the Trustees of the John Hughes Cooper estate had distributed substantial sums of money and valuable stock to the contingent beneficiaries under the will of which Margaret Alderman was one. Margaret Alderman was not told of the distribution of money or stock by the Trustees or by Charles F. Cooper. She was not paid any money and she was not issued any stock. Any money or stock that she would have been entitled to was paid by the Trustees instead to Charles F. Cooper without her knowledge. Neither he nor the Trustees made any accounting to Margaret Alderman and he did not give her any credit on her indebtedness to him as a result of the money and stock that he received that should have gone to Margaret Alderman. She knew nothing about these distributions of money and stock to her fellows (sic) heirs. She did not know that Charles F. Cooper had received money and stock from the trustees that belonged to her and should have gone to her. These facts stand uncontradicted in the record of this case. Nowhere in this case does Charles F. Cooper or any of the Trustees of the estate claim that anyone ever told Margaret Alderman of the distribution of money and stock to the heirs or of the financial condition of the estate.

"I am completely satisfied that had Margaret Alderman known that the Trustees of the estate had made these distributions of money and stock on her behalf she would have been able to arrange for the payment of her debt to Charles F. Cooper. In fact, considering the value of the cash and the stocks belonging to Margaret Alderman, that are now in Mr. Cooper's possession, there is the distinct possibility that the debt has in fact, been repaid in full and extinguished. The Master in Equity stated in his Report that Charles F. Cooper owed no special duty of disclosure to Margaret Alderman. I cannot follow this reasoning. When these distributions of money and stock were made by the Trustees of the estate and when Margaret Alderman's money and stock was given by the Trustees to Charles F. Cooper, both the Trustees and Charles F. Cooper owed a duty to Margaret Alderman to disclose these facts to her and to tell her what they were doing with her money and stock and why they were doing it."

These findings, not having been challenged by appeal, are conclusive. They clearly import such an appropriation by the defendant of plaintiff's property as to amount to a conversion. Upon the conversion of her property, a cause of action for its value arose in plaintiff's favor, which could not have been defeated by tender of a return of the property. 89 C.J.S. Trover and Conversion § 86 (1955); 18 Am. Jur. (2d), Conversion, Sec. 75 (1965). "In actions for conversion . . ., the general rule is that the measure of damages is the value of the property with interest thereon, and the jury may give the highest value up to the time of the trial. (Citations omitted)." *Royal-Liverpool Insurance Group v. McCarthy,* 229 S. C. 72, 75, 91 S. E. (2d) 881, 882 (1956).

A court of equity, having assumed jurisdiction in a case, has the authority to grant complete relief by making an award of compensatory damages where appropriate. This is particularly so in this case where the court has found that the defendant has appropriated plaintiff's property, and the relief sought is for a fiduciary ac-

counting. We are convinced that the account may be stated from the evidence reported, and that this should now be done by us in the exercise of our jurisdiction to find the facts in equity cases.

The advances made by defendant to plaintiff may be ascertained from a ledger sheet which he kept, styled "Chas. F. Cooper, Trustee Margaret D. Alderman." The first entry is a charge of $100.00 on November 26, 1955, and the last on March 10, 1970, for $42.19 to a total of $67,373.59. Interestingly, advances of more than $11,000.00 were made after defendant had taken the absolute assignment of plaintiff's interest. No significant credits are listed.

The record establishes that cash and stock were allotted by the trustees to the defendant, which, subject to the 1959 assignment, belonged to plaintiff, as follows:

"July 10, 1960, 230 shares of stock in Forest Lake Water Company. This company was liquidated April 24, 1961, from which the defendant received $6,965.53 in cash and 886 shares of stock in Mount Vernon Life Insurance Company, which was valued for the purposes of the settlement at $22.50 per share.

January 1, 1961, 784 shares of Mount Vernon stock and $2,808.05 cash.

September 21, 1961, 5,500 shares of Mount Vernon stock.

In 1964, Mount Vernon Life Insurance Company merged with Calhoun Life Insurance Company on the basis of 3 1/16 shares of Calhoun Life stock for each share of Mount Vernon stock—with the result that the defendant received 22,705 shares of Calhoun Life stock in exchange for plaintiff's Mount Vernon Life stock.

The valuation of Mount Vernon stock at $22.50 per share, which plaintiff is willing to accept for accounting purposes, appears quite conservative, and its adoption can result in no injustice to the defendant. This was the value placed upon

the stock by the trustees for settlement purposes in 1961. On November 18, 1964, when it was exchanged for Calhoun Life stock at the rate of 3 1/16 for 1, Calhoun was selling at 10 1/8 per share. On this basis Mount Vernon was worth more than $30.00 per share. The market for Calhoun Life stock through June of 1966 was generally above 8, after which it declined sharply. During 1970, Calhoun Life went through another merger and exchange of stock. The value of the substituted stock is doubtful, certainly far less than that of the stock received by defendant in plaintiff's right many years earlier.

Plaintiff's Brief suggests several alternate statements of the account between the parties reflecting a balance due her by the defendant as of September 10, 1971, ranging from $164,642.79 to $219,053.22. The lower figure results when defendant is charged with three blocks of Mount Vernon Life stock, totalling 7170 shares at $22.50, and the higher when he is charged with 22,705 shares of Calhoun Life stock, for which the Mount Vernon stock was exchanged in the 1964 merger, at $10.00 per share. Although the only testimony in point indicates that this was the market value of Calhoun Life following the merger, the figures quoted were with respect to small blocks of stock. We are not convinced that if 22,705 shares of this stock had been delivered to plaintiff following the merger, she could have disposed of it at this figure. The defendant himself a large Calhoun Life stockholder, has sold none of the stock, and now holds plaintiff's stock and his own (actually stock received in exchange for Calhoun Life stock in the 1970 merger) at a greatly depreciated value. We consider it more equitable to charge him with the Mount Vernon Life stock, originally distributed to him in plaintiff's right, at $22.50 per share, which we are convinced she could have realized, either by sale or by assertion of her rights under Section 12-459, Code of 1962, at the time of the 1964 merger.

We adopt the statement of the account reflecting a balance due plaintiff by defendant of $164,642.79, which appears on

pages twelve and thirteen of appellant's brief, without re-
producing it herein, but with the following qualifications.
Plaintiff charges defendant with receipt of $20,440.00 in cash
and stock on January 1, 1961. Although the defendant has
not challenged the accuracy of plaintiff's statements of the
account, except by denying that he converted her property,
the record suggests that $2,346.65 of this distributive share
may have been previously paid directly to plaintiff by the
trustees and that the defendant received only $18,093.35 on
this date. The record also indicates that the second distribu-
tion to the defendant was on April 24, 1961, instead of April
14 as reflected by the statement. This may require an adjust-
ment in the calculation of interest. Upon remand, such ad-
justment in the balance due plaintiff, as may be indicated
after inquiry into these matters, shall be made and judgment
awarded against defendant accordingly.

Plaintiff also charges that the court erred in failing
to grant judgment to her against the trustees for
wrongfully delivering money and property to a third
person, which belonged to her under the terms of the Will.

The trustees answer that they were authorized and re-
quired by the assignments of 1955 and 1959, which were in
the nature of pledges of plaintiff's interest in the estate, to
make the distributions of her share to Charles F. Cooper.
Only the assignment of 1959 is relevant, and the argument
of the trustees simply ignores the enormous disparity be-
tween the distributions made to Mr. Cooper and the sum of
the advances which the assignment was intended to secure.
On the face of the 1959 instrument, the sum of the advances
to be secured, including $16,000.00 theretofore advanced
under the 1955 instrument, was $35,000.00. Yet, within
about thirty months of its execution, without any inquiry of
or notice to plaintiff, the trustees turned over to Mr. Cooper
funds and property belonging to her, by the terms of the
trust, of the value of more than $170,000.00, nearly five
times the contractual limit on advances to be made under the
assignment, and nearly four times the sum of advances

actually made during the period covered by the distributions. When on September 21, 1961, the trustees distributed to Mr. Cooper stock belonging to plaintiff of the value of $123,750-.00, they had already overpaid the maximum advances authorized by the instrument upon which they relied. They had also overpaid the sum of advances which the defendant had actually made to that date.

A trustee must exercise reasonable care, prudence and diligence in the management of his trust and is liable to a beneficiary for loss occasioned by his negligence. Furthermore, it is his duty to make payment or delivery of the trust property to the person or persons entitled to receive it, and, in general, his liability for loss occasioned by his failure to do so is absolute. Of these rules it was said in *Rodgers v. Herron,* 226 S. C. 317, 85 S. E. (2d) 104 (1954):

"The conflict between (these rules) is more apparent than real. Where the terms of the trust instrument are free from doubt, the trustee who disregards them is guilty of negligence, to say the least. Where they are not clear, or where there is doubt as to who is entitled to receive payment of either the principal or the income of the trust fund, it is the duty of the trustee, in the exercise of the care and diligence to be expected of a prudent man, to apply to the court for instructions. Essentially, therefore, the standard of conduct remains the same throughout the performance of the duties of the trust. That the trustee is held to have acted at his peril when he violates the express provisions of the trust or undertakes, without the aid of the court, to resolve a doubt as to the identity of a beneficiary, is but to say that generally in those circumstances he is negligent as a matter of law." 226 S. C. at 332, 85 S. E. (2d) at 111.

In this case we need not discriminate between a trustee's absolute liability and liability based upon negligence. The circuit court found that the trustees breached their duty to plaintiff by making these distributions of her property without notice to her. This is conclusive that, in this respect, they

failed to exercise due diligence in the management of the trust, and they are liable to plaintiff for any consequent loss. We conclude that plaintiff is entitled to judgment against the trustees personally and against the defendant Charles F. Cooper for the amount found to be due her by him, to be ascertained as herein directed.

Modified and remanded for further proceedings consistent herewith.