20742

INSURANCE FINANCIAL SERVICES, INC., Appellant, v. The
SOUTH CAROLINA INSURANCE COMPANY, Respondent.
(247 S. E. (2d) 315)

*David M. Ratchford* and *Donald E. Jonas,* of *Ratchford & Cooper,* Columbia, *for appellant.*

*David W. Robinson, II* of *Robinson, McFadden, Moore & Pope,* Columbia, *for respondent.*

August 14, 1978.

RHODES, Justice:

This action was brought by the appellant insurance agency against the respondent insurance company seeking both a temporary and permanent injunction against respondent's alleged unlawful termination of the appellant's agency contract with the company. The complaint also sought damages for the alleged unlawful termination. After an injunction *pendente lite* had been obtained barring termination of the contract, a $2,000 injunction bond was set by the court in accordance with an agreement between the parties. The respondent subsequently made motions to have the bond increased and to have the action transferred to the nonjury, equity calendar for trial. The lower court granted both motions. The appellant contends it was error to place the action on the equity docket and to increase the bond. We affirm the lower court.

This action centers around South Carolina Act 1177, which was passed in 1974 and significantly revised the automobile insurance law in this State. Prior to passage of this act, high risk drivers were authorized to be written insurance at "nonstandard" rates which were higher than the "standard" rates at which other drivers were offered insurance. However, the 1974 Act eliminated the distinction between "standard" and "nonstandard" risks and mandated that insurance for all drivers be provided at equalized rates based on a uniform rating and classification system to be developed by the South Carolina Insurance Commissioner.

The appellant alleges that prior to passage of the 1974 Act, it had a considerable volume of "nonstandard" automobile business written through The Travelers Insurance Companies at the higher "nonstandard" rates. According to the complaint, the respondent, anticipating that Travelers was going to cancel the contract with the appellant, notified the appellant on July 18, 1975 that its agency contract with appellant was being terminated effective August 18, 1975. Travelers terminated the agency agreement with appellant on July 24, 1975, and the appellant alleges the cancellation by the respondent was an attempt to avoid writing the "nonstandard" business which had been previously placed by appellant with Travelers. The appellant claims that the respondent's conduct specifically violates the provision of the 1974 Act which is presently codified as S. C. Code § 38-37-940 (2) (1976) and which states that:

No insurer of automobile insurance shall cancel its representation by an agent primarily because of the volume of automobile insurance placed with it by the agent on account of the statutory mandate of coverage nor because of the amount of the agent's automobile insurance business which the insurer has deemed it necessary to reinsure in the Facility.

As a result of the termination of the agency relationship, the appellant alleges that its business has been greatly dam-

aged and that, if the termination is allowed to remain in effect, it will suffer irreparable harm to its business. In its prayer, appellant asks that the respondent be enjoined from terminating the agency relationship and that it be awarded damages in the amount of $500,000 actual and punitive.

The appellant's action was instituted on August 4, 1975. A hearing on the temporary relief sought was held before the Honorable Clyde A. Eltzroth and an injunction *pendente lite* was issued on October 31, 1975. Judge Eltzroth concluded that, if the temporary injunction were not granted, the appellant would suffer irreparable harm. This was based on his finding that, if the respondent were allowed to terminate the agency relationship, a "domino effect" would likely ensue whereby other companies represented by the appellant would also terminate the appellant in order to avoid writing the large book of "nonstandard" business with the ultimate result that appellant would represent no companies. Pursuant to Code § 15-55-60, Judge Eltzroth, by order dated November 10, 1975, set an injunction bond of $2,000, this amount having been agreed to by the parties.

The respondent subsequently moved on September 30, 1976 to have the injunction bond increased. In connection with this motion, the respondent also sought to have the action transferred to the non-jury, equity calendar for trial. After conducting a hearing, the Honorable Walter J. Bristow ordered that the action be transferred to the equity calendar and that the amount of the bond be increased to $50,-000. This appeal followed.

We first consider the question of whether Judge Bristow erred in transferring the action to the equity calendar.

The appellant first contends that S. C. Code § 15-23-60 (1976) grants it an absolute right to a trial by jury. This contention is without merit. In pertinent part, § 15-23-60 provides that "[a]n issue of fact in an action for the recovery of money *only* . . . must be tried by a

jury . . ." (Emphasis added.) The present action, however, is not one for the recovery of money *only* for the appellant also seeks permanent injunctive relief. The action has both legal and equitable attributes and § 15-23-60 is inapplicable.

The appellant next contends that, even if Code § 15-23-60 does not vest it with an absolute right to trial by jury, the overwhelming character of the action is, nevertheless, legal because: (1) the action is based on a tort;[1] and (2) its main concern in bringing the action is to recover damages with the permanent injunction sought being merely incidental.

The appellant's argument that the present action is one at law solely because of its contention that it is based upon a tort is without merit. This argument ignores the fact that an action sounding in law may be transformed to one in equity because equitable relief is sought. *See,* 1 Am. Jur. (2d), Actions § 7 (1962). The appellant seeks a permanent injunction in the present action and, ordinarily, when injunctive relief is sought, an action is considered to be equitable. *Atlantic and C. Air Line Ry. Co.,* 79 S. C. 266, 60 S. E. 675 (1908).

Since the appellant has prayed for money damages in addition to seeking equitable relief, characterization of the action as equitable or legal depends on the appellant's "main purpose" in bringing the action, *Bramlett v. Young,* 229 S. C. 519, 93 S. E. (2d) 873 (1956); *Ogilvie v. Smith,* 215 S. C. 300, 54 S. E. (2d) 860 (1949); and *Alford v. Martin,* 176 S. C. 207, 180 S. E. 13 (1935). The main purpose of the action should generally be ascertained from the body of the complaint. *Id.* However, if necessary, resort may also be had to the prayer for relief and any other facts and circumstances which throw light upon the main purpose of the action. *Bramlett, supra.*

Although the appellant asserts that its main purpose in bringing this action was to recover damages for the injury to its business, it seems clear that appel-

---

[1] Relying primarily on the provisions of the 1974 Act codified in Code § 38-37-940, the appellant asserts the respondent's actions give rise to a cause of action for the tort of "unfair competition".

lant's main concern is to permanently enjoin the respondent from terminating the appellant's contract. As the appellant points out in its brief, "The character of its [the appellant's] relationship with those companies it represents is vitally important, *the very essence of its continued existence.*" (Emphasis added.) The gravamen of the action is the preservation of the relationship. At the hearing before Judge Eltzroth, the appellant argued that if the respondent terminated the appellant agency other companies would follow suit and the appellant would be forced out of busines. This project was a primary factor underlying Judge Eltzroth's decision to grant the injunction *pendente lite.* Given these circumstances, it is our opinion that the recovery of damages is only incidental to the primary objective of permanently enjoining defendant from terminating the agency relationship, which plaintiff maintains would have the effect of putting it out of business.

In addition, although the appellant demands considerable damages in the prayer of its complaint, it would appear that damages are limited by the facts of this case. Appellant was terminated for only a short period before the temporary injunction was granted. During this period, there were other companies in the agency with which business could be written. And, other than the bare assertion in the complaint that the appellant "has been damaged greatly", there is no allegation that appellant has lost customers or suffered other pecuniary loss.

The trial of a case in a court of equity does not foreclose the award of damages. *Alderman v. Cooper,* 257 S. C. 304, 185 S. E. (2d) 809 (1971).

The second question presented by the appellant is whether it was error for Judge Bristow to increase the amount of the injunction bond from $2,000 to $50,000.

An injunction bond may be subsequently increased upon a showing of a material change in conditions or

if unusual and unforeseen circumstances have developed since the original setting of the bond. *Epps v. Bryant,* 219 S. C. 307, 65 S. E. (2d) 112 (1951). We feel Judge Bristow correctly concluded that there had been a material change in conditions warranting an increase in the bond to $50,000.

The record indicates that, at the time the $2,000 bond was set by consent of the parties, the respondent's net loss on the business written by the appellant from January through August of 1975 was $5,987. However, the amount of loss thereafter materially increased to the extent that the net loss on the business written by the appellant totaled $56,-850 for the first eight months of 1976.

While appellant argues that the respondent failed to minimize these losses by making maximum use of the reinsurance facility created under the Act, we are not impressed by this argument. The drastic increase in losses suffered by the respondent during the *interim* period in question is ample reason for the aforesaid increase of the injunction bond.

Affirmed.

LEWIS, C. J., and LITTLEJOHN, NESS and GREGORY, JJ., concur.