2531

Sandy CLARK, Appellant v. Esther HARGRAVE, Holly Hall Associates Limited Partnership, Ashdale Homeowners and Landowners Association, William R. Warren, Judith C. Warren, Lawrence R. Coleman, Priscilla M. Coleman, William R. Hall, Cheryl M. Hall, Alfred P. Jenkins, Walter Thomas, Jean Brown, Charlene J. Munigualt (as Trustee of the Heirs of Sharper Gadsten); and also, the unknown adult heirs of the following deceased individuals: Maria Bailey, Russell Bailey, Realuia Bailey, Bero Bridget, and June Gadston, Defendants, of whom Holly Hall Associates Limited Partnership, is the Respondent.

(473 S.E. (2d) 474)

Court of Appeals

*Cornelius J. Riley;* and *Gary D. Brown,* Ridgeland, *for appellant.*

*Thomas C. Davis* and *John M. Tatum, III,* Beaufort, *for respondent.*

Submitted May 7, 1996.

Decided July 8, 1996.

*Per Curiam:*

In this action to determine title to an 8.1-acre tract of real property, Sandy Clark appeals the order of the master-in-equity finding Dr. Bruce G. Pratt (Pratt) adversely possessed the property and finding Holly Hall Limited Partnership (Holly Hall) possessed fee simple title to the property. We affirm.[1]

---

[1] Because oral argument would not aid the court in resolving the issues, we decide this case without oral argument.

Sandy Clark commenced this action to determine title to two tracts of real property, including an 8.1-acre tract of wooded and unimproved land located on Lady's Island in Beaufort County, South Carolina (Lot 36).[2] Clark alleged he and Esther Hargrave each held an interest in the land based on an unbroken chain of title. Clark requested the court divide the property in kind and grant him fee simple title to his share of the land.

Holly Hall answered and counterclaimed alleging it held fee simple title to Lot 36. Specifically, Holly Hall claimed Pratt acquired title to Lot 36 by way of a deed from Rosa Fields dated July 21, 1960. Holly Hall further alleged Pratt entered the property under claim of right in July of 1960 and remained in continuous possession until he conveyed his interest to Holly Hall by way of a deed dated January 23, 1992. Holly Hall asserted Pratt adversely possessed the property from 1960 to 1992.

The case was referred to the master for final judgment with direct appeal to the Supreme Court. By order dated April 16, 1993, the master found Pratt had adversely possessed Lot 36 for a period in excess of thirty years. Based on this finding, the master concluded Holly Hall possessed fee simple title to Lot 36. Clark appeals.

### STANDARD OF REVIEW

In his order, the master states Clark sought to quiet title to the property. Normally, such an action would be one in equity. *See Van Every v. Chinquapin Hollow, Inc.*, 265 S.C. 474, 219 S.E. (2d) 909 (1975). However, the character, as legal or equitable, of an action is determined by the complaint in its main purpose, the nature of the issues as raised by the pleadings or the pleadings and proof, and the character of the relief sought under them. *Insurance Fin. Serv., Inc. v. South Carolina Ins. Co.*, 271 S.C. 289, 247 S.E. (2d) 315 (1978); *Bell v. Mackey*, 191 S.C. 105, 3 S.E. (2d) 816 (1939).

Clark alleged in his Complaint that Maria Bailey and her predecessors in title entered the property under color of title by deed dated April 7, 1951, and have since been in continu-

---

[2] This case involves only the 8.1-acre tract known as Lot 36.

ous, hostile, open, actual, notorious, uninterrupted and exclusive possession. Clark further asserted he is entitled to have the cloud on the title removed and to receive fee simple title to his share of the property. Holly Hall, in its Answer and Counterclaim, asserted it possessed fee simple title to the subject property, and asserted adverse possession as an affirmative defense.

The determination of title to real property is legal in nature. *Wigfall v. Fobbs*, 295 S.C. 59, 367 S.E. (2d) 156 (1988). In addition, an adverse possession claim is an action at law. *Miller v. Leaird*, 307 S.C. 56, 413 S.E. (2d) 841 (1992). Because this action primarily involves the determination of title to real estate based on adverse possession, we hold it should be characterized as an action at law. In an action at law, referred to the master for final judgment with direct appeal to the Supreme Court, the appellate court's review is limited to the correction of any error of law; it must affirm the master's factual findings unless there is no evidence that reasonably supports those findings. *Jefferies v. Phillips Constr. Co.*, 316 S.C. 523, 451 S.E. (2d) 21 (Ct. App. 1994).

I.

Clark asserts the master erred in finding Holly Hall's possession was open, notorious, hostile, and exclusive. We find no error.

It is axiomatic that a party claiming title by adverse possession must show the extent of his possession. *Butler v. Lindsey*, 293 S.C. 466, 361 S.E. (2d) 621 (Ct. App. 1987). This requirement is not negated by the mere fact the adverse claimant enters under color of title. It is well settled that "[w]hile color of title draws the constructive possession of the whole premises to the actual possession of a part only, and is evidence of the extent of the possession claimed, it is not of itself evidence of adverse possession, and it does not follow that adverse possession can be proved by less evidence when the entry is under color of title than when it is not." *Id.* at 470, 361 S.E. (2d) at 623. Moreover, proof of title by adverse possession requires a showing by clear and convincing evidence of actual, open, notorious, hostile, continuous, and exclusive possession by the claimant, or by one or more persons through whom he has claimed for the full statutory period.

*Miller,* 307 S.C. at 61, 413 S.E. (2d) at 844. In South Carolina, the relevant statutory period is ten years. S.C. Code Ann. § 15-67-210 (1976). Adverse possession in the instant case was asserted as an affirmative defense, and the burden of proof was therefore upon Holly Hall. *Miller,* 307 S.C. at 61, 413 S.E. (2d) at 844.

Maria Bailey obtained Lot 36 by deed dated April 5, 1951, and died intestate. Clark presented evidence establishing that through this and two other intestacies, he and Esther Hargrave have possessed record title to Lot 36 since June 10, 1991. Clark testified his family members paid taxes on the property and produced evidence to that effect in the form of tax receipts. Cathy Aughtman, a title abstractor, testified Maria Bailey and her heirs had paid taxes on Lot 36 from 1936 to the date of the hearing. The parties stipulated Clark has the Superior paper title.

Holly Hall presented evidence that Pratt adversely possessed Lot 36. Ladson Howell, an acquaintance of Pratt, testified that to his knowledge, Pratt had owned Lot 36 since 1968. He testified he was familiar with the land because he frequently hunted deer on the property. Howell testified there is a cable mounted between two trees which blocks access to the road leading onto the property. Howell stated that at a different point on the road, there are two additional gates with chains and locks which also block access to the property. He also stated there was a "No Trespassing" sign on one of the chains which has been removed on occasion, presumably by trespassers, and replaced. Howell stated that he was confident Pratt erected the cables and chains and they have been in place since at least 1968. According to Howell, he and others who wanted to hunt on Lot 36 had to ask Pratt for permission. Howell further testified Pratt has, since at least 1968, posted "No Trespassing" and "No Hunting" signs throughout the property.

Roxanna Roe Pratt, Pratt's daughter, testified the "No Hunting" and "No Trespassing" signs had been posted for at least 30 years. She testified a dirt road leading from the main roadway was the sole means of vehicular ingress and egress onto the 8.1-acre tract. Ms. Pratt also testified he father placed the cable and chains on the property to stop people from dumping trash, littering, and parking on the land.

Clyde Priester, who was familiar with the property for at least 34 years, testified there were three cables along the roadway leading into the property; the first at the entrance, the second halfway down the road, and the third further down the road. He testified Pratt instructed him to erect the cables because people were dumping trash and trespassing on the property. He further testified the cables had been in place for 15 or 20 years and blocked access to the land, although trespassers occasionally crossed the blockades. Priester testified people would ask his permission to open one of the gates to gain access to a cemetery located on the property. He further testified he posted "No Trespassing" signs on the land at the direction of Pratt at least 20 years earlier.

Pratt testified he thought he acquired title to Lot 36 from Rosa Fields by virtue of a deed dated July 21, 1960. He testified that before the filing of this action, he thought he was paying taxes on the property. He stated that after his father died and he inherited Holly Hall Plantation, he continued to pay taxes on the property, which he thought included Lot 36. He further testified that in 1960, he directed Priester to post "No Trespassing" signs on the land. As evidence of his ownership of the property, Pratt testified he posted signs on the property, hunted the property, and put cables across the road to limit access to the property.

Citing *Lusk v. Callaham*, 287 S.C. 459, 339 S.E. (2d) 156 (Ct. App. 1986) and *Cook v. Eller*, 298 S.C. 395, 380 S.E. (2d) 853 (Ct. App. 1989), Clark argues that because Pratt was under the mistaken belief that he owned Lot 36, his possession was not "hostile" within the meaning of the applicable case law. In *Lusk*, this court found possession under a mistaken belief that property is one's own and with no intent to claim against the property's true owner cannot constitute hostile possession. However, in *Perry v. Heirs at Law & Distributees of Gadsden*, 316 S.C. 224, 449 S.E. (2d) 250 (1994) and *Wigfall*, 295 S.C. 59, 367 S.E. (2d) 156, our Supreme Court held that the mistaken belief rule is applicable only to cases involving boundary disputes between adjoining landowners. Because this case involves a dispute over an entire tract of land, we find the mistaken belief rule in *Lusk* and *Cook* to be inapplicable.

In determining Pratt "possessed" Lot 36 within the mean-

ing of the applicable case and statutory law, the master noted Pratt controlled access to the property by means of a locked gate, posted "No Trespassing" signs throughout the property, and generally treated it as part of the Holly Hall Plantation. Furthermore, the master also recognized possession of the land by Priester as Pratt's agent.

We find the evidence supports the master's conclusion that Pratt possessed the property. Pratt, Ms. Pratt, Howell, and Priester all testified to the existence of cables or chains with locks blocking access to the tract of land, as well as the posted "No Trespassing," and "No Hunting" signs. Furthermore, Howell testified he and numerous others often hunted on the property with Pratt's permission. Although Priester testified he did not hunt on the property, he stated he walked across the property with Pratt's permission and lifted one of the cables to allow access to a cemetery for people who asked his permission. Taken together, these acts constitute some evidence that Pratt was in possession of the property throughout the relevant time period. *See Mullis v. Winchester,* 237 S.C. 487, 118 S.E. (2d) 61 (1961) (the nature and location of the land, as well as whether the use to which land has been put comports with usual management of such property, are factors which should be considered in determining whether an adverse claimant has established his possession of such property).

Based on our review of the record, we find the evidence reasonable supports the master's conclusion that Pratt's possession of the property was open, notorious, hostile, and exclusive. *See Knox v. Bogan,* — S.C. —, 472 S.E. (2d) 43 (Ct. App. 1996) (Davis Adv. Sh. No. 14 at 10).

## II.

Clark asserts further the master erred by minimizing his superior record chain of title to the property and his tax payments. We find no error.

The parties stipulated Clark proved superior record title to Lot 36. Further, the parties did not dispute Clark's claim that his family had paid taxes on Lot 36. The master also found that by deed dated July 21, 1960, Rosa Fields purportedly vested Pratt with title to Lot 36 and Pratt entered into possession of the land pursuant to the deed. The master further recognized Holly Hall's claim to ownership of Lot 36 rested

solely upon adverse possession. In concluding Pratt adversely possessed Lot 36, the master stated his possession of the deed from Rosa Fields was probative evidence of adverse possession. In addition, the master found, and we agree, there was clear and convincing evidence that Pratt's possession of the land satisfied the requisite elements of adverse possession. We find the master properly considered both parties' interest in the subject property, including Clark's superior record title. Simply put, Clark's superior record title cannot operate to divest Holly Hall of its title properly acquired through adverse possession. *See Sumner v. Murphy,* 20 S.C.L. (2 Hill) 488 (1834) ( a showing of adverse possession of land for the time period prescribed by the statute of limitations not only bars the remedy, but practically extinguishes the right of the party having true paper title, and vests a perfect title in the adverse holder); 3 Am. Jur. (2d) *Adverse Possession* § 298 (1986) (title acquired by adverse possession is new and independent title by operation of law, is not in privity in any way with any former title and is as effective as a formal conveyance by deed or patent. Such title is "a good, actual, absolute, complete, and perfect legal title in fee simple, carrying all of the remedies attached thereto.").

Accordingly, the order of master is

Affirmed.

CURETON, CONNOR and HEARN, JJ., concur.