THIS OPINION HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT BE CITED OR RELIED ON AS 

PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 239(d)(2), SCACR.
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
 Virginia W. Alford, Appellant,
 v.
 Joseph L. Tamsberg, Jr. and State of South Carolina, Respondents.
 
 
 

Appeal From Charleston County
 Roger M. Young, Circuit Court Judge
Unpublished Opinion No.  2007-UP-350
Heard May 9, 2007  Filed July 6, 2007  
AFFIRMED

 
 
 
 Donald Jay Budman, of Charleston, for Appellant.
 Attorney General Henry D. McMaster, Deputy Attorney General T. Stephen Lynch, Assistant Deputy Attorney General J. Emory Smith, Jr., all of Columbia and David M. Swanson, Marvin D. Infinger and Julie O. Medich, all of Charleston, for Respondents.
 
 
 

PER CURIAM:  In this action to try title, Virginia Alford argues the master in equity erred in finding Joseph Tamsberg established title to marshlands through adverse possession.  She also contends the master erred in (1) finding res judicata barred her claim; (2) denying her motion for a new trial; and (3) dismissing her claim for trespass.  We affirm.
FACTS
Alford and Tamsberg are adjoining landowners.  Both properties consist of highlands and marshlands.  At issue in this case is a 150 acre tract of marshland that is, essentially, all of the marshland Tamsberg owns, which Alford claims title to.  Alford also claims the boundary line in the center of a canal, or ditch as it is often referred to, between the highland portion of the two properties is incorrect (Highland Dispute).  She alleges the boundary line should be placed on the northern side of the canal on Tamsbergs property.
Alford can directly trace the title to her property back to 1839, to a deed from Thomas Butler to her relative, Thaddeus C. Skrine.   Prior to 1951, Tamsbergs property consisted of two parcels of land owned by Belmont Land and Investment Company (Belmont Land).  In 1951 the first known survey (Belmont Survey) of the two parcels was commissioned.  On April 18, 1956, Belmont Land conveyed the two parcels, as shown on the 1951 Belmont Survey, to Belmont Hosiery Mills, Inc. (Belmont Hosiery).  
 
In 1961, Alford commenced an action against Belmont Hosiery, for recovery of 40 acres of marshland.  The parties settled the suit by Belmont Hosiery quitclaiming the disputed 40 acres to Alford.  The marshlands deeded to Alford were depicted on the settlement plat prepared by W.S. Gaillard.  After the parties reached the settlement, the trial court dismissed Alfords claim with prejudice.  

In 1967, Alford commissioned Gaillard to prepare a survey of her property.  In 1968, Alford consolidated all her property into one deed and one plat.  The deed identified the property as fully described and delineated by a plat of W.L. Gaillard, Surveyor, dated April 1967  (1967 Alford Survey).
 
On May 30, 1968, Belmont Hosiery conveyed the land, minus the 40 acres of marshland deeded to Alford, to Heritage Development Company  (Heritage).   By a Certificate of Merger, Heritage merged into Parkdale Mills, Inc., (Parkdale), Tamsbergs immediate predecessor.  On January 30, 1990, Tamsberg purchased the property from Parkdale.   For this purchase, Tamsberg had a survey prepared by Luckey Sanders (1990 Tamsberg Survey).  All of the surveys since 1951, including the 1967 Alford Survey, show the boundary lines of the adjoining property as depicted on the 1951 Belmont Survey prepared by Gaillard.  
 
On January 26, 2000, Alford initiated this action, seeking to quiet title to a part of Tamsbergs marshlands.  She also sought to quiet the boundary between the adjoining lands.  The case was referred to the master, and on September 14, 2000, the parties partially tried the case.  Shortly thereafter, the parties reached a settlement.  Alford moved to have the settlement quashed, and the master granted her motion.  Due to the complexity of the case, Alford received numerous extensions.  

On February, 14, 2002, the master concluded that because the parties disputed title to marshlands, the State of South Carolina, as presumptive owner of all tidelands, would have to be made a party to the case.  On January 28, 2003, Alford amended her complaint to reflect her finding of a 1797 grant from the State of South Carolina to Skrines immediate predecessor in title, Joseph Butler (Butler Grant).  Essentially, Alford claimed that because she showed her title emanated from a grant from the State and Tamsberg could not trace his title back to a grant from the State, she owned all of Tamsbergs marshlands.  

a hearing on June 18 and 19, 2003, the master found the State of South Carolina had divested itself of any marshlands conveyed by the Butler Grant.  Therefore, the master found both Tamsberg and Alfords claim to their respective marshes was superior to the States claim.  Additionally, the master found the 1967 Alford Survey and the 1951 Belmont Survey both refer to the boundary line between the adjoining properties as ditch the line.  The master also found the unrecorded 1886 Royall Plat also placed the boundary line at the center.  Accordingly, the master concluded that the surveys place the line in the center of the ditch.  Further, the master found the 1990 Tamsberg survey also described the boundary line as ditch on or near property line.  

As to the marshland, the master found all of the surveys were in agreement as to the boundary lines of the two properties.  The master found that Tamsbergs 60 year chain of title included the marshlands; however, his title could not be traced to Butler or Skrine.  Due to the doctrine of adverse possession, the master concluded that Tamsberg had ownership of the marsh through the presumption of a grant theory.  Additionally, the master found section 15-3-380 of the South Carolina Code (2005), the forty-year lapse statute, provided Tamsberg with good title.  Further, the master found Alford acquiesced to Tamsbergs use of the marshlands for 32 years.  Lastly, the master noted that res judicata barred Alfords claim because of the previous suit with Tamsbergs predecessor in title, Belmont Hosiery.  

Alford filed a motion under Rule 59(e), SCRCP, to alter or amend the judgment, which the master denied.  The master also denied Alfords motion for a new trial based on after discovered evidence.  This appeal followed.
STANDARD OF REVIEW
Normally, an action to quiet title to property is one in equity.  Clark v. Hargrave, 323 S.C. 84, 86, 473 S.E.2d 474, 475 (Ct. App. 1996).  However, the character, as legal or equitable, of an action is determined by the complaint in its main purpose, the nature of the issues as raised by the pleadings . . . and the character of the relief sought under them.  Id. (citing Ins. Fin. Serv., Inc., v. S.C. Ins. Co., 271 S.C. 289, 247 S.E.2d 315 (1978).  
 
Alford alleged in her complaint that Tamsberg owned no marshland and that she had superior title to his land.  Tamsberg, in his answer, responded that he possessed fee simple title to the marshlands and asserted adverse possession as an affirmative defense.  Because this action primarily involves the determination of title to real estate based on adverse possession, it is an action at law.  Id. at 87, 473 S.E.2d at 476 (holding an action primarily involving adverse possession can properly be characterized as an action at law).  Additionally, a boundary dispute is an action at law.  Bodiford v. Spanish Oak Farms, Inc., 317 S.C. 539, 544, 455 S.E.2d 194, 197 (Ct. App. 1995).  In an action at law, on appeal of a case tried without a jury, the findings of fact of the judge will not be disturbed upon appeal unless found to be without evidence which reasonably supports the judges findings.  Townes Assocs., Ltd. v. City of Greenville, 266 S.C. 81, 86, 221 S.E.2d 773, 775 (1976).
LAW/ANALYSIS
I.  Highland Dispute 
Alford argues the master erred in placing the boundary line between the adjoining properties down the center of the ditch.  Alford argues the true boundary line, as depicted in the unrecorded 1886 Royall Plat, shows the boundary line is on the north side of the ditch.  We disagree.  
During the trial, Tamsberg presented Thomas Bessent, an expert in the field of land surveying.  Alford originally hired Bessent to resurvey the property because she questioned the boundary line between the adjoining properties.  Bessent testified he looked at the Belmont Survey, Alford Survey, and Tamsberg Survey, as well as the 1886 Royall Plat.  He then went to the property to conduct his own survey.  He opined the correct boundary line was the center of the ditch as depicted in the Belmont, Alford, and Tamsberg Surveys.  In Bessents expert opinion, even the Royall Plat shows the boundary line as the center of the ditch.  He pointed out that the Royall Plat has a dashed black property line that clearly runs through the middle of the ditch.  At the end of that black line is the word post.  According to Bessent, the black line is marked by a post, in the center of the ditch.  

Alford presented Steve Johnson, also as an expert in surveying.  He opined the boundary line was on the northern side of the ditch on Tamsbergs property.  He testified that he used Alfords parol evidence to help him establish the boundary line.
We hold that the record overwhelmingly supports the masters finding that the boundary line is in the center of the ditch.  The evidence shows that all of the surveys, including the 1886 Royall Plat, relied on by Alford, shows the boundary line as the center of the ditch.  In fact, the only evidence to the contrary is Alfords expert, Johnson, who admitted to using Alfords parol testimony to aid the rendition of his survey.  Accordingly, we find the master properly concluded the true boundary line between the adjoining properties is the center of the ditch, as depicted by the various surveys. 
 
II.  Adverse Possession 
Alford argues the master erred in finding Tamsberg obtained title to the marsh by adverse possession.  Specifically, Alford contends Tamsberg cannot show his title to the marsh derives from a grant from the State of South Carolina.  She maintains she can trace back her chain of title to a grant from the State, but that because she did not prove actual ownership of the marshlands until this litigation the presumption was the State owned the marsh.  Therefore, Alford argues Tamsbergs claim to the marsh by adverse possession could not accrue against her in the short time since she has established her title.  We disagree.
In South Carolina, the State is the presumptive owner of all tidelands.  State v. Yelsen Land Co., Inc., 265 S.C. 78, 81, 216 S.E.2d 876, 878 (1975).  A party wishing to rebut this presumption bears the burden of showing the State granted title to such lands to their predecessors in title.  Id. (citing State v. Pinckney, 22 S.C. 484 (1885); State v. Hardee, 259 S.C. 535, 193 S.E.2d 497 (1972)).  In addition, the doctrine of adverse possession cannot be used against the State.  Davis v. Monteith, 289 S.C. 176, 179-180, 345 S.E.2d 724, 276 (1986) (citations omitted).     
In this case, the master found that on July 3, 1797, the State of South Carolina granted 325 acres of marshland to Joseph Butler, which included both Alfords and Tamsbergs portion of the marsh.  Therefore, the master concluded that Alford and Tamsbergs claim to their respective parcels of marshland were superior to the States claim.  The master also found that because Tamsbergs title to the marshlands cannot be specifically traced to the Butler Grant that, but for a succession of events over the years, and many years of possession by Tamsberg and his predecessors in title, Alford would have a superior claim to Tamsbergs marshes.
Alfords argument rests on the faulty premise that the State held actual title to the marshlands until she proved otherwise.  Under Alfords reasoning, Tamsberg could not have adversely possessed against the State and, because she has held title for such a short time, Tamsberg is unable to satisfy the elements of adverse possession against her.  However, as noted above, title to marshlands in South Carolina is presumptively rather than actually vested in the State.  Alford, through diligent research, overcame the presumption and established the State granted marshlands to her predecessor in title in 1797.  Therefore, Alford and her predecessors in title have held title to the marshlands since 1797 and Tamsberg and his predecessors could use the doctrine of adverse possession to claim title to the land.  We now turn to examine whether Tamsberg has satisfied the elements of adverse possession.
In South Carolina, when a party shows actual, hostile, exclusive, and continuous possession of land for twenty years a presumption of grant is said to exist.  Haithcock v. Haithcock, 123 S.C. 61, 67, 115 S.E. 727, 729 (1923).  In addition, to satisfy the requisite period of time the time of possession may be tacked not only by ancestors and heirs, but also between parties in privity. . . .  Getsinger v. Midlands Orthopaedic Profit Sharing Plan, 327 S.C. 424, 430, 489 S.E.2d 223, 226 (Ct. App. 1997).  This common law presumption rests upon the theory that after a long period of peaceful possession, the possessor, or those under whom the possessor hold, will be presumed to have entered upon and possessed the property under a valid grant, now lost.  S.C. Juris. Adverse Possession § 10 (citation omitted).  
 
The master found Tamsberg and his predecessors for at least forty-seven years have maintained, improved, and repaired the existing dikes which encompassed impoundments in the marshland.   Tamsberg expended at least $100,000 on these activities since he purchased the property in 1990.  The master also found Tamsberg protected the marsh through caretakers he hired and with no trespassing signs he posted.   The master also noted Tamsberg and his predecessors paid property taxes.  The master concluded Tamsberg and his predecessors were in open, continuous, actual, hostile, and exclusive possession of the marsh.  Accordingly, the master held Tamsberg satisfied the twenty-year common law presumption of a grant and held irrefutable title to the land.
 
Alford believes Tamsberg has not met the requisite element of hostility and, thus, cannot establish title to the marsh.  First, Alford maintains that Tamsberg cannot show his possession of the marsh was hostile to her because the State held title to the marsh until this litigation.  She believes the short amount of time that has transpired since the master declared she held legal title to the land was insufficient for Tamsberg to satisfy the hostility element.  For the reasons stated above, we find title to the marsh vested in Alfords predecessors in 1797.  Accordingly, we find  Alfords argument on this point to be without merit. 
 
Second, Alford maintains because Tamsberg claimed throughout the course of this litigation he owned the marsh by virtue of his title, his claim of ownership is insufficient to establish hostile possession.  Alford relies on Cook v. Eller, 298 S.C. 395, 397, 380 S.E.2d 853, 854 (1989), for the proposition that possession under the mistaken belief a party owns a parcel of land is insufficient to establish hostility.  We find Alfords reliance is misplaced.  As the South Carolina Supreme Court stated in Wigfall v. Fobbs, the mistaken belief rule is applicable only to cases involving boundary disputes between adjoining landowners.  295 S.C. 59, 61-62, 367 S.E.2d 156, 158 (1998).  Therefore, possession of land under a mistaken belief that property is ones own can constitute hostile possession if the case involves a dispute over an entire tract of land.  See Clark v. Hargrave, 323 S.C. 84, 89, 473 S.E.2d 474, 478 (Ct. App. 1996) (finding the mistaken belief rule inapplicable to a dispute over an entire tract of land).  Although Alford and Tamsberg are adjoining property owners, the dispute over the marshland is over an entire tract of land.  Accordingly, we find the mistaken belief rule does not apply and Tamsberg has satisfied the element of hostility.
Alford also contends Tamsbergs possession of the marsh has not been exclusive because she and her family have walked the property and posted no trespass signs.  During trial, Tamsberg testified that he saw the no trespass signs on his marsh, took them off, and carried them to Alfords property.  Although the record is unclear, it appears the no trespass signs were posted approximately the same time Alford filed suit.  We find Alfords acts are insufficient to negate Tamsbergs and his predecessors exclusive possession of the property.  As noted earlier, Tamsberg improved and maintained the property.  Further, he testified during the time he made the improvements Alford never informed him she believed she owned the property.  In addition, Tamsberg placed a conservation easement on his entire tract of land, including the marsh.  Accordingly, we find Tamsbergs acts are consistent with exclusive ownership of the marsh.
Moreover, the master held Tamsberg and his predecessors had satisfied section 15-3-380 of the South Carolina Code (2005), the forty-year lapse statute.  The statute provides a party cannot commence an action for the recovery of real property or for interest therein against a person in possession under a claim of title  . . . unless the person claiming, his ancestor, or grantor, was actually in possession of the same . . . within forty years from the commencement of such action.  Further, section 15-3-380 permits tacking. S.C. Juris. Adverse Possession § 19; see Sutton v. Clark, 59 S.C. 440, 454, 38 S.E. 150, 156 (1901) (finding that §15-3-380s predecessor Code 1962 §10-129 permits the tacking of the time a party has been in possession with the time during which those under whom he claims held possession).  
 
The master found, and we so hold, Tamsberg and his predecessors have been in possession for at least forty-seven years.  Since at least 1956, when Belmont Hosiery consolidated two tracts to form what is now Tamsbergs property, Tamsberg and his predecessors have continually possessed the property at issue in this case.  During this time period, Tamsberg and his predecessors have hunted, maintained, improved, and hired caretakers to keep trespassers off the land.   Therefore, because Tamsberg has been in possession of the marsh since his 1990 purchase of the land, and he and his predecessors were in possession since at least 1956, and neither Alford nor her predecessors were in possession of the marshland for the previous forty year statutory period, we find the master properly held Tamsberg acquired title to the marsh under section 15-3-380.
Alford also argues the master erred in finding the boundary to the marshlands was established as a matter of acquiescence.  She contends she always objected to Tamsbergs ownership of the marshlands.  Because we affirm the masters order on the basis that Tamsberg established ownership of the marshlands through the presumption of a grant theory and the forty-year lapse statute, we find it unnecessary to reach Alfords argument on this point.  Matthews v. Dennis, 365 S.C. 245, 248 n.2, 616 S.E.2d 437, 439 n.2 (Ct. App. 2005); see also Futch v. McAllister Towing of Georgetown, Inc., 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (holding an appellate court need not review remaining issues when its determination of a prior issue is dispositive of the appeal).
III.  Res Judicata
Alford argues the master erred in finding res judicata barred her claim. She also contends that in the first action, the State was an indispensable party to the suit involving marshlands and was not made a party.  She maintains res judicata cannot apply to actions where all necessary parties are not joined.  We disagree.
Initially, we note Alfords argument regarding the State as an indispensable party is not preserved for our review.  To preserve an issue for appellate review, the issue cannot be raised for the first time on appeal, but must have been raised to and ruled upon by the trial court.  Charleston County Dept of Soc. Servs. v. Jackson  368 S.C. 87, 104-05, 627 S.E.2d 765, 775 (Ct. App. 2006) (citing Staubes v. City of Folly Beach, 339 S.C. 406, 412, 529 S.E.2d 543, 546 (2000) (It is well-settled that an issue cannot be raised for the first time on appeal, but must have been raised to and ruled upon by the trial court to be preserved for appellate review)).  Alford did not raise this argument to the master.  Additionally, although Alfords Rule 59(e), SCRCP, motion did raise an assignment of error on the ground of res judicata, Alford did not raise the issue of the State as an indispensable party to the first action.  Therefore, this issue is not preserved.  See Washington v. Washington, 308 S.C. 549, 551, 419 S.E.2d 779, 781 (1992) (holding when an appellant neither raises an issue at trial nor through a Rule 59(e), SCRCP, motion to amend, the issue is not properly presented to an appellate court for review).  Therefore, we decline to address whether the fact the State was not a party to the first action precludes the application of res judicata against Alford.
We now turn to address whether res judicata bars Alfords claim.   Under the doctrine of res judicata, a litigant is barred from raising issues previously adjudicated between the parties in a subsequent action.  See Hilton Head Ctr. of S.C., Inc. v. Pub. Serv. Commn of S.C., 294 S.C. 9, 11, 362 S.E.2d 176, 177 (1987).  Additionally, the doctrine of res judicata bars a litigant from raising any issues which may have been raised in the first action.  Pye v. Aycock,  325 S.C. 426, 432, 480 S.E.2d 455, 458 (Ct. App.  1997)  Res judicata requires three elements: (1) a judgment that is final, valid, and on the merits; (2) the parties in the second action are identical to those in the first; and (3) the subsequent action must involve a subject matter properly included in the first action.  See Owenby v. Owens Corning Fiberglas, 313 S.C. 181, 183, 437 S.E.2d 130, 132 (Ct. App. 1993) (citing Laffitte v. Tucker, 216 S.C. 201, 57 S.E.2d 255 (1950)).  
 
In 1961, Alford brought suit against Tamsbergs predecessor in title, Belmont Hosiery, alleging she owned 40 acres of Belmont Hosierys marshlands.  As part of a settlement in that suit, Belmont Hosiery gave Alford a quitclaim deed for the forty acres.  The deed provided, in part, Alford acknowledges that by the acceptance of this quit-claim deed she has released Belmont Hosiery Mills, Inc., its successors and assigns, from any and all claims and demands whatsoever that she may have to the dates of these presents . . . .  On April 18, 1968, the trial court issued an order dismissing Alfords complaint with prejudice.  The order provided that Alford was forever barred from claiming or to make claim of the [d]efendant for damages . . . in respect to any of the matters and things set forth in the [c]omplaint in this cause.  Relying on the trial courts dismissal and the settlement deed, the master concluded res judicata barred Alfords claim.  

The first suit was dismissed with prejudice which served as an adjudication on the merits.  See RIM Assocs. v. Blackwell, 359 S.C. 170, 182, 597 S.E.2d 152, 159 (Ct. App. 2004) (quoting Nelson v. QHG of S.C., Inc., 354 S.C. 290, 311, 580 S.E.2d 171, 182 (Ct. App. 2003) (A case that is dismissed with prejudice indicates an adjudication on the merits and, pursuant to res judicata, prohibits subsequent litigation to the same extent as if the action had been tried to a final adjudication.)).  Secondly, although Tamsberg was not involved in the first suit, we find he and Belmont Hosiery were in privity, and therefore, Tamsbergs legal interests were litigated in the first action.  See Richburg v. Baughman, 290 S.C. 431, 434, 351 S.E.2d 164, 166 (1986) (One in privity is one whose legal interests were litigated in the former proceeding.); see also First Natl. Bank of Greenville v. U. S. Fid. & Guar. Co., 207 S.C. 15, 26, 35 S.E.2d 47, 53 (1945) ([P]rivity means a mutual or successive relationship to the same rights of property.) (citation omitted).  Therefore, we find the master properly concluded res judicata bars Alfords claim. 
 
Alford next argues that because the issue of ownership of the marshland pursuant to the 1797 Butler Grant was not raised in the first action, that the issues in the current litigation are different from those in the first action.  Essentially, she argues because she was unaware she owned all of Tamsbergs marshlands during the first suit that res judicata should not operate to defeat her claim. 
 
In the first action, Alford attempted to prove title to forty acres of marshland.  At that time, she could have brought suit alleging she owned all of the marshland because the 1797 Butler Grant was located in the public records. In 1961, during the first suit, she could have thoroughly researched her title and brought the current suit.  Therefore, we find Alford could have brought a claim for all of the marshlands in the first suit.  We also note res judicata is based upon the principle that the public interest requires an end of litigation. Price v. City of Georgetown,  297 S.C. 185, 187, 375 S.E.2d 335, 337 (Ct. App. 1988) (citations omitted).  We find the third element, whether the subsequent action involves the same subject matter as the first, has been met because both actions involved title to the marshlands.  Accordingly, the master did not err in finding res judicata barred Alfords claim.
Additionally, as an alternate sustaining ground we find that by accepting the quitclaim settlement deed, Alford agreed to release Belmont Hosiery, and its successors and assigns from all future claims regarding the disputed property.  See IOn, L.L.C. v. Town of Mt. Pleasant, 338 S.C. 406, 418, 526 S.E.2d 716, 722 (2000) (allowing an appellate court to affirm on any ground in the record).  Therefore, Alford cannot maintain this action against Tamsberg because he is a future successor of Belmont Hosiery, and she agreed to forgo any future suit based on the disputed marshlands in exchange for forty acres. 
 
IV.  Motion For a New Trial
Alford argues the master erred in denying her motion for a new trial based on newly discovered evidence.  We disagree.
The grant or refusal of a new trial lies within the discretion of the trial court. 
Gray v. Bryant, 298 S.C. 285, 288, 379 S.E.2d 894, 896 (1989) (citing 
Jenkins v. Dixie Specialty Co., Inc., 284 S.C. 425, 326 S.E.2d 658 (1985)).  In order to grant a new trial based upon the ground of newly discovered evidence a party must show: 

 (1) that the evidence is such as will probably change the result, if a new trial is granted. (2) That it has been discovered since the trial. (3) That it could not have been discovered before the trial by the exercise of due diligence. (4) That it is material to the issue. (5) That it is not merely cumulative or impeaching . . . . 
 

Evatt v. Campbell, 234 S.C. 1, 11-12,106 S.E.2d 447, 453 (1959) (citations omitted).  
 
In the present case, Alfords newly discovered evidence consists of  deeds from the 18th century, discovered subsequent to trial, that caused her to question the placement of the Butler Grant in relation to her land.  She contends the placement of the Butler Grant has a significant bearing on the boundary line between her and Tamsbergs property.  Although we appreciate the difficulty of drudging through old records and acknowledge that Alfords task has not been easy, we find because the evidence could have been found, with due diligence, prior to the trial, it does not constitute newly discovered evidence.  Further, Alford has not shown how the newly discovered evidence would change the result of this case.  Regardless of what these new deeds reveal, we cannot conceive of a way in which they would change the fact Tamsbergs title to the marshlands is valid under the twenty year grant theory and the forty-year lapse statute.  Accordingly, we find the master properly denied Alfords motion for a new trial.
V.  Trespass
Alford argues the master erred in dismissing her claim for trespass. She contends because she is the title owner to the marshlands, Tamsberg has trespassed upon her property.  For the reasons stated above, we find Tamsberg is the rightful owner of the marshlands, and, therefore, no claim of trespass can lie against him.  Accordingly, we find the master properly dismissed Alfords claim.
CONCLUSION
We find the master properly concluded the boundary line to the highland portion between Alfords and Tamsbergs adjoining properties is the center of the ditch.  We also find Tamsberg has established possession of a fee interest in the marshlands under the twenty year grant theory and the forty-year lapse statute.  Accordingly, the order of the master is 
AFFIRMED.
GOOLSBY, STILWELL, and SHORT, JJ., concur.