**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

East Chateau Land Holding, LLC and Hillcreek Farms, LLC, Appellants,

v.

Angie Delores Stokes, Candece Lorraine Stokes, and Joe Murray David, Respondents.

Appellate Case No. 2018-000608

———————

Appeal From Lexington County
DeAndrea G. Benjamin, Circuit Court Judge

———————

Unpublished Opinion No. 2021-UP-344
Submitted May 3, 2021 – Filed September 29, 2021

———————

**AFFIRMED**

———————

Kelly Louise Burnside, of Law Offices of Robert Dodson, PA, of Columbia, for Appellants.

Angie Delores Stokes, Candece Lorraine Stokes, and Joe Murray David, pro se.

———————

**PER CURIAM:** In this action to quiet title, East Chateau Land Holding, LLC and Hillcreek Farms, LLC (collectively, Appellants) ask this court to reverse the circuit court's decision to quiet title to Angie Delores Stokes (Stokes), arguing that the

circuit court erred in (1) finding that Stokes's signature on a deed transferring property to Hillcreek Farms was the product of misrepresentation and (2) finding that the deed was improperly notarized. We affirm.

## FACTS/PROCEDURAL HISTORY

Stokes was celebrating her daughter's birthday at a nightclub one summer night when she met Albert Jerry Sanders Jr. (Jerry).[1] Stokes was sixty-four years old at the time; Jerry "was in his fifties." The two became romantically involved.

Eventually, the couple decided to get married. They planned to live in a home at 135 East Chateau Drive (the Property). As an added bonus, the couple planned to use the proceeds of a reverse mortgage on the home, in Stokes's name, to hold "a big wedding." To facilitate that, the Property was transferred from East Chateau Drive Land Holding, LLC (East Chateau), to Stokes on May 20, 2011. Stokes signed the deed on behalf of East Chateau. The LLC had, at least at one point, been owned by Jerry. Stokes later recounted that "Jerry gave me the house."

When Stokes received a payment pursuant to the reverse mortgage, the couple "put it in [Jerry's] name and [Stokes's] name so [her] bank account had nothing to do with any of this." The couple then went to Lizard's Thicket restaurant to celebrate, where they were met by Jerry's sister, Joan (Sister).[2] Stokes described to the circuit court what happened next:

> A. And his sister came up and [Jerry] handed her some papers and she filled out the papers and she said[,] congratulations, you're now married.
> Q. So his sister said that to you?
> A. Yes.
> Q. Okay. And what was your reaction?
> A. I couldn't believe I was already married.
> Q. Okay.
> A. Nobody said anything to me other than sign a paper.

Jerry later bought Stokes a ring at a jewelry store. That would be as close as Stokes would come to having a big wedding.

---

[1] The record does not make clear in what year Stokes met Jerry.
[2] Because Jerry's sister and mother are both named "Joan," we refer to them based on their relationship to Sanders.

The relationship with Jerry evidently soured. Stokes explained that, "[s]everal months" later:

> I was watching TV one night and Jerry came in and he went over and shut the TV off and he said[,] you're not using my electricity, so I just sat there, and he said[,] by the way, that land and that house does not belong to you, I still own it.[3]

In claiming to still own the Property, Jerry was apparently referring to a deed purportedly signed by Stokes on November 4, 2011. That deed transferred the Property to Hillcreek Farms, LLC (Hillcreek Farms). It was witnessed by Jerry's mother (Mother) and an individual named Carl Millwood. Mother also notarized the deed.[4] During the trial in this case, Stokes insisted she had "never seen" the deed before Jerry began the legal proceedings. Stokes also said that Mother did not witness Stokes signing the deed.

When Stokes refused to leave, Jerry allegedly began harassing her and her family. In January 2014, Hillcreek Farms filed a "Petition for Writ Mandamus and Vacate" in Lexington County. In June 2016, Appellants filed a Second Amended Complaint to Quiet Title, naming Stokes, her daughter, and her son-in-law as defendants (collectively, Respondents).[5] The complaint called for title to be quieted either to East Chateau based on Stokes's denial in a deposition that she had signed the deed transferring the Property from East Chateau to herself, or to Hillcreek Farms based on the deed Stokes allegedly signed transferring the Property from herself to Hillcreek Farms.

Respondents countered with a general denial covering all of the complaint except the citizenship and residences of Respondents, the description of the Property, and Stokes's previous denial that she signed the deed transferring the

---

[3] This incident appears to have taken place next door to the Property, in a home where Stokes lived with Jerry at the time.

[4] Stokes's testimony is unclear as to whether the signature of the other witness belonged to Mother or Sister. Mother said she witnessed the signature. In either case, Mother is a notary public, and Appellants do not contest that Mother notarized the document.

[5] Stokes testified at trial that her daughter, Candece Lorraine Stokes; son-in-law, Joe Murray David; and grandchild lived at the Property.

Property from East Chateau to herself.  Respondents later filed a Motion to Amend Answer and Counterclaim asserting that Stokes was misled into signing the second deed.   The circuit court denied cross-motions for summary judgment and Respondents' motion to amend.

The case proceeded to trial on February 27, 2017.  At trial, Respondents presented documents from Jerry's bankruptcy proceedings stating that Mother owned Hillcreek Farms.[6]  Mother testified she was unaware of her purported 100 percent interest in Hillcreek Farms.[7]

Stokes testified that she had three residences but considered the Property to be her "primary residence."  She said her mail was sent to a different location because Jerry "would get my mail and open it."  At trial, Stokes also testified she signed the deed placing the Property in her name.[8]  Stokes further testified that she owned East Chateau.

_____

[6] Jerry's debts had been discharged in bankruptcy on September 9, 2010.

[7] The chronology of the events to which Mother testified, as well as her testimony itself, can be confusing.  Mother also testified:

> Q.    All right.  And you own Hillcreek Farms; is that correct?
> A.    That is correct.

Additionally, Appellants argued at one point in regards to the bankruptcy filing: "[t]he bankruptcy court, she owned it -- it's saying July 24, 2007."  Jerry filed for bankruptcy in 2009.

[8] As Appellants noted before the circuit court, Stokes's testimony at trial appears to be inconsistent with her deposition, though the dates given in the deposition do not align with those in the record in this case.  At that point, Stokes testified:

> A:    It was not a[n] East Chateau Holding.  It was a Jerry Sanders that gave me the house.
> Q:    . . . It looks like the deed is from East Chateau Holdings to Angie Delores Stokes.  And the deed at the bottom, could you tell me please who signed that deed?
> A:    No, sir.
> Q:    That's not your signature?
> A:    No, sir.
> Q:    So you did not sign that deed?  So --

> Q. Okay. Were you ever an owner of East Chateau Drive Holding, LLC?
> A. Yeah, I own it.
> Q. You own East Chateau Drive -- I mean, I'm sorry. Did you own the LLC?
> A. I guess I did.
> Q. Did you have any documentation of ownership of that?
> A. No, I don't.

Stokes continued to deny "sign[ing] a deed conveying that property to Hillcreek Farms[.]" Stokes conceded that she was skeptical that the "marriage" at the Lizard's Thicket was genuine, but she maintained that she believed she signed a marriage license at the restaurant.

Marvin Dawson Jr., an expert witness for Appellants, testified that the signature on the deed to Hillcreek Farms was "more likely than not" Stokes's signature. He added: "More likely than not is probably a close degree of certainty. I'd say ninety percent."

Richard Kirby, an attorney, testified for Respondents "as an expert within the areas of real estate transactions, quiet title[,] and bankruptcy." Kirby testified extensively about a series of transfers, property divisions, and bankruptcy filings by Jerry. Kirby testified that Jerry's bankruptcy "schedules are incorrect and could be considered fraud, but later there were other schedules filed which I think show that he did not fully disclose even though he had an opportunity to." However, Kirby also appeared to cast doubt on the validity of the transfer of the Property to Stokes, arguing that "technically [Jerry] wasn't entitled to transfer that property because he

---

> A: If I did, it looked different than this. I do not -- like I say, Jerry gave me the house. On what date, I have no idea because I cannot remember dates or anything.
> Q: But is the signature on the deed that you're looking at now, is that your signature?
> A: It looks like my signature, but I do not remember signing this and it -- no. It does not look like my signature. The Ds are different.
> Q: So you're not sure whether it's your --
> A: I'm almost positive it is not my signature.

had been discharged and his bankruptcy case was over. He did not disclose that as an asset, so it certainly was improper because he did not disclose it and the Chapter 7 trustee should have known about that property, but did not." Kirby further testified that "this deed to Hillcreek is not valid." Additionally, Kirby opined that "title cannot be quieted" because of the questions about the deed and the absence of mortgage companies that should have been parties.

In an order dated March 5, 2018, the circuit court quieted title in favor of Stokes. The court concluded that Stokes's signature on the deed transferring the Property to Hillcreek Farms resulted from "a misrepresentation that she was signing a marriage document." The court also concluded that Mother's notarization of the deed was improper. "[M]isconduct on the part of Hillcreek Farms, LLC leading up to and during the execution of the deed and the belief held by Ms. Angie Delores Stokes that she was signing a marriage document voids the transaction." This appeal followed.

## ISSUES ON APPEAL

1. Did the circuit court err in concluding that Mother was disqualified from notarizing the deed transferring the property from Stokes to Hillcreek Farms?

2. Did the circuit court err in holding that the deed transferring the Property to Hillcreek Farms was void because of misrepresentation?

## STANDARD OF REVIEW

> Normally, an action to quiet title to property is an action in equity. However, the character, as legal or equitable, of an action is determined by the complaint in its main purpose, the nature of the issues as raised by the pleadings or the pleadings and proof, and the character of the relief sought under them.

*Jones v. Leagan*, 384 S.C. 1, 10, 681 S.E.2d 6, 11 (Ct. App. 2009) (citation omitted).

In this case, the nature of the issues in the appeal are tied to the validity of a deed, and the relief provided by the circuit court was essentially to void a deed. "An action to set aside deeds is a matter in equity." *Bullard v. Crawley*, 294 S.C. 276, 278, 363 S.E.2d 897, 898 (1987); *see also Clark v. Hargrave*, 323 S.C. 84, 86–87,

473 S.E.2d 474, 476 (Ct. App. 1996) (mentioning defenses in discussion of standard of review).

When reviewing a matter in equity, "we may determine the facts in accordance with our own view of the preponderance of the evidence. We, however, will not disregard the findings of the trial judge who saw and heard the witnesses and was in a better position to judge their credibility." *Donnan v. Mariner*, 339 S.C. 621, 626, 529 S.E.2d 754, 757 (Ct. App. 2000) (footnotes omitted).

## LAW/ANALYSIS

Appellants argue that the circuit court erred in finding that the deed was the product of misrepresentation and, thus, invalidating it. We disagree.

A party seeking to invalidate a deed for fraud or misrepresentation must prove the allegation by clear and convincing evidence. *See Rivers v. Woodside Nat'l Bank of Greenville*, 150 S.C. 45, 49, 147 S.E. 661, 663 (1929) ("The deed under attack is regular and valid on its face, which gives rise to the presumption that it is valid in all respects. Being attacked for fraud and misrepresentations, it devolved upon plaintiff to make the fraud or misrepresentations appear by clear and convincing evidence."[9]). "Clear and convincing evidence is that 'degree of proof which will produce in the [fact finder] a firm belief as to the allegations sought to be established. Such measure of proof is intermediate, more than a mere preponderance but less than is required for proof beyond a reasonable doubt; it does not mean clear and unequivocal.'" *Satcher v. Satcher*, 351 S.C. 477, 483, 570 S.E.2d 535, 538 (Ct. App. 2002) (quoting *Anonymous v. State Bd. of Med. Exam'rs*, 329 S.C. 371, 374 n.2, 496 S.E.2d 17, 18 n.2 (1998)).

Appellants attempt to question the circuit court's findings of fact by parsing the dates in the order and casting doubt on whether Mother was at the restaurant when the alleged misrepresentation took place. However, none of those findings are necessary to the circuit court's order. And while the circuit court's order is far from a picture of clarity, we note that the court was attempting to untangle the dense thicket of transactions undertaken by Jerry, Stokes, and other figures—all of it

---

[9] As is not uncommon for opinions from this era, the majority quoted the circuit court's decision at length and then adopted it. *See Rivers*, 150 S.C. at 60, 147 S.E. at 666 ("The decree of the circuit judge . . . will be reported, and it is affirmed."). As a result, the quotes here and at other points are from the circuit court's ruling, as adopted by the supreme court.

complicated by inconsistent and contradictory testimony. Under these circumstances, we defer to the findings of the circuit court on the issue of credibility. Even without specific findings to this effect, the order makes clear that the circuit court found Stokes's testimony more credible than that of Mother.

Furthermore, by focusing narrowly on the deed itself, Appellants are trying to obscure the picture that emerged from the testimony and other evidence introduced at trial. Jerry's obvious financial difficulties, his juggling of various business entities, the contradictory statements about the ownership of Hillcreek Farms, Mother's decision to serve as a notary for a transaction in which she allegedly stood to benefit (setting aside for the moment its legality)—all of this is evidence in this case as well. This evidence contributes to the full picture that supports the circuit court's conclusions and is in keeping with the lessons of human experience. *Cf. Rivers*, 150 S.C. at 49, 147 S.E.2d at 663 (finding a lack of clear and convincing evidence, and noting, "[t]he evidence offered for plaintiff is not of that character. It is full of glaring inconsistencies of a substantial sort, and in some particulars is too far at variance with the natural and usual course of human conduct to inspire belief."). In that context, the circuit court could find that there was clear and convincing evidence that Jerry, perhaps with the help of others, manipulated Stokes to his own ends. Furthermore, we agree with that finding.

Appellants argue that in so doing, we have to "resolve every reasonable doubt in favor of the Respondents and against the Appellants" (citing *Grant v. Hudson*, 192 S.C. 394, 398, 7 S.E.2d 2, 3 (1940) (mem.) ("To decide in favor of the plaintiff and against the defendant, it would be necessary to resolve every reasonable doubt in favor of the plaintiff and against the defendants."[10])). We disagree, and in fact see it as precisely the opposite. To find for Appellants, one would need to resolve in favor of Appellants all reasonable inferences about the circumstances of Jerry's courtship of Stokes, the lack of evidence that the money went to any purpose other than Jerry's enrichment, and the questions about why another notary was not used. Clear and convincing evidence is a high standard, but it does not require us to suspend disbelief. *See Satcher*, 351 S.C. at 483, 570 S.E.2d at 538 ("Clear and convincing evidence is that 'degree of proof which will produce in the [fact finder] a firm belief as to the allegations sought to be established. Such measure of proof is intermediate, more than a mere preponderance but less than is required for proof beyond a reasonable doubt; *it does not mean clear and unequivocal*.'" (emphasis added) (quoting *Anonymous*, 329 S.C. at 374 n.2, 496 S.E.2d at 18 n.2)).

---

[10] The body of this case is also largely the ruling of the circuit court, including the section quoted here.

Because our decision on the misrepresentation of the deed is sufficient to dispose of the appeal, we decline to rule on whether Mother's signature as notary public on the deed invalidated it. *See Futch v. McAllister Towing of Georgetown, Inc.*, 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (citing *Whiteside v. Cherokee Cty. Sch. Dist. No. One*, 311 S.C. 335, 428 S.E.2d 886 (1993), for the proposition that "appellate court need not address remaining issues when disposition of prior issue is dispositive").

For those reasons, we find that the circuit court did not err in finding that the deed was a product of misrepresentation and should be treated as invalid.

## CONCLUSION

Accordingly, the judgment of the circuit court is

**AFFIRMED.**[11]

**KONDUROS, GEATHERS, and MCDONALD, JJ., concur.**

---

[11] We decide this case without oral argument pursuant to Rule 215, SCACR.